152 So. 578

In re CANAL BANK & TRUST CO.

Intervention of WAINER.

No. 32596.

Jan. 2, 1934.

Rehearing Denied Jan. 29, 1934.

James Wilkinson, of New Orleans, for appellant.

Dart & Dart and Dufour, St. Paul, Levy & Miceli, all of New Orleans (Nelson S. Wocddy, E. B. Charbonnet, Jr., and Norton L. Wisdom, all of New Orleans, of counsel), for appellees Brock and others.

Sanders, Baldwin, Viosca & Haspel, Lawrence A. Molony, Robert Weinstein, Milling, Godchaux, Saal & Milling, George A. Dreyfous, and Miller, Bloch & Martin, all of New Orleans, amici curiæ.

LAND, Justice.

On December 27, 1932, H. Wainer & Co. borrowed from Canal Bank & Trust Company $20,000, for which H. Wainer & Co. gave its promissory note indorsed by H. Wainer, individually, payable ninety days after date.

H. Wainer & Co. is a trade-name under which H. Wainer, individually, is doing business.

The note is made payable at the Canal Bank & Trust Company, New Orleans, La.

There is a provision in the note that: "At the maturity of this note, or when otherwise due, as above provided, any and all money, stocks, bonds or other securities or property of any nature whatsoever on deposit with, or held by, or in the possession of, said. bank as ·collateral or otherwise, to the credit or for account of the makers, endorsers or other parties hereto, or any of them, shall be and stand applied forthwith to the payment of this note, or any other indebtedness due said bank by said parties hereto, or any of them. * * * "

On March 1, 1933, H. Wainer & Co. had on deposit with the Canal Bank & Trust Company the sum of $18,490.45, and H. Wainer, individually, had on deposit with that bank the sum of $5,551.02.

From March 1, 1933, until March 20, 1933, the Canal Bank & Trust Company remained closed and did no business, except that on Friday March 3, 1933, pursuant to a resolution adopted by the New Orleans Clearing House Association, with the approval of the state banking commissioner and the acting Governor of the state, permitted withdrawals by its depositors not exceeding 5 per cent. of the balance to the credit of the depositors as of March 1, 1933. During this period the Canal Bank & Trust Company remained closed, except as above stated, acting under the orders of the state authorities and the Proclamations of the President of the United States, of date March 6 and March 9, 1933 (see 12 USCA § 95 note), declaring and extending a national banking holiday.

On March 10, 1933, the President by Executive Order (see 12 USCA § 95 note) authorized the Secretary of the Treasury, under such regulations as he may prescribe, to permit any member bank of the Federal Reserve System to perform any and all of its usual banking functions.

The President in this Executive Order further directed that all banks who are members of the Federal Reserve System, desiring to reopen for the performance of all of their usual or normal banking functions, should apply for a license therefor to the Secretary of the Treasury.

The Canal Bank & Trust Company was at that time a member of the Federal Reserve System, and promptly applied for a license to be permitted to reopen for the performance of all its usual and normal banking functions, but was refused a license by the Treasury Department.

On March 18, 1933, the Secretary of the Treasury issued and promulgated a regulation, designated as No. 27, in which he authorized any bank which was a member of the Federal Reserve System, and which was not licensed to reopen for the purpose of its usual banking functions, to permit withdrawals by depositors and payments to creditors of such percentage of amount due to them, not exceeding 5 per cent., as it may determine with the approval of the appropriate state authorities.

Thereafter the Canal Bank & Trust Company, with the approval of the state banking commissioner, permitted withdrawals by depositors not exceeding 5 per cent. of the

amount to their credit as of the close of business on March 1, 1933.

Prior to March 27, 1933, H. Wainer & Co. withdrew all of the 5 per cent. balance to its credit as of March 1, 1933, $924.52.

The Canal Bank & Trust Company notified its depositor that it would not permit the withdrawal of the remaining 95 per cent. of its balance, $17,537.85.

On March 27, 1933, the Canal Bank & Trust Company made available and permitted H. Wainer, individually, to withdraw 5 per cent. of the balance to his credit as of March 1, 1933, namely, $277.50. All of this amount the depositor withdrew, except the sum of $57.65.

The remaining 95 per cent. to his credit as of March 1, 1933, $5,273.47, the Canal Bank & Trust Company notified him he could not withdraw.

On the date on which the note of H. Wainer & Co., indorsed by H. Wainer, fell due, March 27, 1933, H. Wainer & Co. sent the Canal Bank & Trust Company two checks, one for the sum of $2,500 and the other for the sum of $17,500, claiming that they were entitled to pay, compensate or offset the note with these checks. The offer of H. Wainer & Co. and H. Wainer was refused, and the checks were subsequently returned to them without prejudice to the rights of either party.

At no time during the period beginning March 2, 1933, and ending May 20, 1933, did the Canal Bank & Trust Company pay out more than 5 per cent. to any depositor of the balance to the credit of such depositor as of March 1, 1933, and did not pay out any gold or gold certificates whatever.

The bank did not lend any money, but did collect on notes and extend notes and did borrow cash on its assets from the Reconstruction Finance Corporation for the purpose of setting up the fund to pay the 5 per cent. due depositors and creditors.

The amount borrowed from the Reconstruction Finance Corporation is as follows:

$1,000,000 on March 3, 1933.

$2,300,000 on March 20, 1933.

$1,100,000 on March 22, 1933.

The Canal Bank & Trust Company was placed in liquidation on May 20, 1933, and it is not now and has not been since May 20, 1933, in a position to pay all creditors and depositors in full in cash, and the amount that will ultimately be paid to creditors and depositors, or the time at which payment or payments will be made, is indefinite and not capable of ascertainment.

The facts above stated are in accordance with the statement of facts agreed upon by counsel, and found at pages 24 to 27, inclusive, in the transcript in this case.

At the date of the maturity of the note, H. Wainer & Co. had a balance in the Canal Bank & Trust Company of $17,537.85, and H. Wainer a balance of $5,331.12, a total balance of $22,868.97, or $2,868.97 over and above the amount due the bank on the note, in which it is expressly stipulated that the deposits of intervener in the bank, at the maturity of the note, "shall be and stand applied forthwith to the payment of this note."

The Canal Bank & Trust Company having refused on March 27, 1933, when the note fell due, to accept the check of H. Wainer & Co. for $17,500 and the check of H. Wainer for

$2,500 in compensation or offset of the note, the intervener, H. Wainer, filed the present suit against the liquidators of the bank to compel them to deliver to him as paid and canceled the note for $20,000 and also a dividend of $842.70 on the balance of deposit remaining in the bank.

The trial judge held that the Canal Bank & Trust Company was solvent on March 27, 1933; that the note for $20,000 was compensated on that date, when it fell due, by virtue of the waiver provision therein that the deposit should be applied to the discharge and extinguishment of the debt evidenced by the note; and that the proclamations and orders of the President of the United States and the regulations of the Secretary of the Treasury did not affect plaintiff's right to compensate and offset the note with his deposits in the bank.

But, on the other hand, the trial judge finally dismissed intervener's suit as of nonsuit, on the sole ground that the right to compensate or offset could not be set up by intervener as plaintiff in a direct action, but must be pleaded in answer as a defense, or by way of exception.

From this judgment intervener has appealed.

1. We fail to find any admission in the statement of facts agreed upon by counsel that the Canal Bank & Trust Company was insolvent on March 27, 1933, when the note for $20,000, signed by H. Wainer & Co. and indorsed by H. Wainer, fell due at that bank, and when it is claimed by intervener that compensation or set-off took place.

The liquidators of the Canal Bank & Trust Company cite the case of the People's Bank in Liquidation v. Mississippi & Lafourche Drainage District, 141 La. 1009, 76 So. 179, as authority for their contention that compensation did not take place in this case, as one of the debtors, the bank, is insolvent.

An examination of that case will show that the state bank examiner "took possession of all the assets of the defendant, as those of an insolvent bank" on July 14, 1914. The depositor's debt to the bank did not become due until March 1, 1915. The depositor did not tender his deposit in payment of his obligation prior to the time the bank examiner took over the assets of the bank, as in the present case.

This court rested its decision in the People's Bank Case squarely upon the proposition that, when the bank examiner took over the property of the bank, the bank lost the administration of its property, and no longer had the faculty of paying its debt by compensation or otherwise.

The People's Bank Case, therefore, has no application to the facts of this case. We therefore pretermit any discussion as to the correctness of that decision, as any pronouncement upon the subject by this court would be, clearly, mere obiter dictum.

2. The trial judge erred in dismissing intervener's suit as of nonsuit for the reason that article 368 of the Code of Practice of this state expressly provides that: "Compensation may be pleaded, either in the answer to the principal demand, or it may be claimed by a distinct and separate demand," as is done by intervener in this case.

3. The general law as to compensation or set-off, as it prevails in this state, is found in the following articles of our Civil Code:

Article 2207. "When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts, in the manner and cases hereafter expressed."

Article 2208. "Compensation takes place of course by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums."

Article 2209. "Compensation takes place only between two debts, having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable.

"The days of grace are no obstacle to the compensation."

There can be no doubt that the bank was indebted to intervener in the amount of the deposits, and that intervener was indebted to the bank in the amount of the note.

These debts existed simultaneously on March 27, 1933, when the note fell due, and they were equally liquidated and demandable on that day.

The two debts, therefore, became reciprocally extinguished at that date, "by the mere operation of law, even unknown to the debtors."

The general American rule is that: "Where a depositor is indebted to the bank and his indebtedness is due, he may set off his deposit against his indebtedness * * * and this right of set-off exists without any previous demand being made for the deposit." Ruling Case Law, vol. 3, par. 157, p. 529.

Colin and Capitant, in discussing this subject, say:

"C'est en matière commerciale que la compensation trouve ses plus importantes applications. Cela se comprend sans peine. Il est rare que des rapports réciproques d'obligations se forment entre personnes non commerçantes. Au contraire, ces rapports mutuels entre deux négociants, par exemple entre un commerçant et son banquier, entre un fabricant et un commissionnaire, sont de tous les jours. Or, le commerce vit surtout de crédit; il évite le plus possible l'emploi du numéraire, il a besoin de simplifier le plus possible les paiements.

"De là est né l'usage du *compte courant* dont nous avons déjà parlé et qui est fondé sur le principe de la compensation. Toutes les opérations commerciales qui se font entre les deux parties, viennent se fondre dans le compte courant, et le *solde* constaté lors la clôture de ce compte fait seul l'objet d'un paiement effectif. * * *"

The translation of the above is as follows: "It is in commercial matters that compensation finds its most important applications. That is easily understood. It is rare that reciprocal accounts of obligations are formed between persons who are not merchants. On the contrary, these mutual accounts between two merchants, for example, between a merchant and his banker, between a manufacturer and an agent, occur every day. Now, commerce subsists above all on credit; it avoids as much as possible the use of cash, it needs to simplify payments as much as possible.

"From this was born the custom of the *account current*, of which we have already spoken, and which is founded on the prin-

ciple of compensation. All the commercial operations which occur between the two parties become blended in the account current, and *the established balance* at the time of the closing of this account *alone* is the object of *a real payment.* * * * " (Italics partly ours.) Colin & Capitant, Cours Élémentaire De Droit Civil Français, Tome II, Septième Édition (1932), pp. 319, 325, n° 336, 346.

No *real* payment being necessary as the basis of the right of intervener to compensate the note with his deposits, the contention of the liquidators of the bank that intervener in this case cannot plead compensation, because he could not draw more than 5 per cent. of his deposits in bank, an amount insufficient to pay the note, is not sound in law.

Compensation, at all events, is but a *fictitious* payment, the balancing of accounts, the extinction of one debt by another, by mere operation of law.

We are not impressed, therefore, with the contention of the liquidators in this case that the universal law of compensation, or set-off, prevailing in the various states of the Union was set aside, either by the prohibition in the President's promulgations against "paying out" bank deposits after the national banking holiday had been declared, or by the limitation in Regulation No. 27 of the Secretary of the Treasury of payment of 5 per cent. to depositors and creditors.

The reasons for the promulgations of the President and the resolution of the Secretary of the Treasury are made apparent by the following preamble in the promulgation made by the Chief Executive of the Nation, of date March 6, 1933:

"Whereas there have been heavy and unwarranted withdrawals of gold and currency from our Banking institutions for the purpose of hoarding; and

"Whereas continuous and increasingly extensive speculative activity abroad in foreign exchange has resulted in severe drains on the Nation's stocks of Gold; and

"Whereas it is in the best interests of all Bank depositors that a period of respite be provided with a view to preventing further hoarding of coin, bullion or currency or speculation in foreign exchange and permitting the application of appropriate measures to protect the interests of our people."

It is clear, therefore, that "the paying out of deposits" prohibited by federal action is leveled solely at the paying out of actual money, and not at such fictitious payments as arise from settlement of accounts between banker and depositor by the universal law of compensation, or set-off, which takes place by mere operation of law, and not by the withdrawal of actual funds from the banks.

Neither the proclamations of the President, nor the regulation of the Secretary of the Treasury changed, or could change, the indisputable fact that mutual indebtedness between the bank and intervener existed simultaneously on March 27, 1933, when the note of intervener fell due, and that this indebtedness on that date was equally liquidated and demandable. Necessarily, the law of compensation or set-off applies to the case.

■ 4. The Secretary of the Treasury, under the authority conferred upon him by the President's proclamations declaring and continuing the national bank holiday, issued on March 18, 1933, Regulation No. 27, which

provides that "Any State Banking Institution which is a member of the Federal Reserve System and which is not licensed by the Secretary of the Treasury to reopen for the performance of usual Banking functions may, with the approval of the appropriate State authority having immediate supervision of such Banking institution, permit withdrawals by depositors and make payments to creditors of such percentage of the amounts due to them (not exceeding 5%) as it may determine, provided that at or before the time of such withdrawal or payment it shall set aside and make available for such purpose a fund sufficient to pay all depositors and creditors the percentage so determined."

Intervener contends that, to claim that this order defeated intervener's right to compensate his note, by such part of his deposit as was necessary for that purpose, would deprive him of his private property, his right of compensation under the law, and "his contract" with the bank to have his deposits applied on the note, in violation of article 5 of the Amendments to the Federal Constitution.

This contention on the part of the intervener, in our opinion, is without merit for two reasons. In the first place, we are not of the opinion that the regulation of the Secretary of the Treasury has, or was intended to have, such effect, for reasons already assigned.

In the second place, the provision in the note applying intervener's deposits on the note is not a contract, but is a mere waiver by the intervener of the obstacle of article 2210 of our Civil Code, in providing that compensation does not take place where one of the demands is for the restitution of a deposit.

The exception provided by article 2210 of the Civil Code as to irregular deposits is in favor of the depositor and not of the bank.

In France, where the Code contains articles similar to ours, it is universally recognized that, where the obstacle preventing compensation is in favor of one of the parties, that party may waive the obstacle and plead compensation; this kind of compensation being designated by the French commentators as "facultative compensation."

In discussing this subject Planiol says. "Définition et Utilité—La compensation facultative est celle qui s'opère *par la volonté des parties*, quand l'une d'elles lève un obstacle résultant des dispositions de la loi. Une des conditions manque pour la compensation légale: par exemple, l'une des deux dettes n'est pas liquide, ou bien elle est suspendue par un terme, ou bien encore il s'agit d'une créance née d'un dépôt: si les parties sont d'accord pour accepter en compensation la dette non liquide, ou si celle qui y avait droit renonce au bénéfice du terme, ou enfin si le déposant consent à être réglé par compensation, leur volonté doit être respectée et la compensation s'opérera (Cass. 25 nov. 1891, D. 92. 1 296)."

The translation of the above is as follows: "Facultative Compensation is that which operates by the will of the parties, when one of them removes an obstacle resulting from the dispositions of the law. One of the conditions is lacking for legal compensation: for example, one of the two debts is not liquidated or perhaps it is suspended by a term, or perhaps it involves a credit arising out of a deposit: if the parties agreed to accept in compensation the non liquidated debt, or if the one who

had the right, renounces the benefit of the term, or finally, if the depositor agrees to be governed by compensation, there will ought to be respected and compensation will operate (Cass. Nov. 25, 1891, D. 92. 1 296)." M. Planiol, Droit Civil, vol. 2, Troisième Édition (1905) n. 594, pp. 194, 195.

■ 5. Article 2215 of our Civil Code also provides that: "Compensation can not take place to the prejudice of the rights acquired by a third person; therefore, he who, being a debtor, is become creditor since the attachment made by a third person in his hands, can not, in prejudice to the person seizing, oppose compensation."

This article is a literal reproduction of article 1298 of the Code Napoleon, and has no application to the present controversy.

It refers to the case where a third person "acquires" rights to one of the obligations, by attachment, assignment, or in any other legal way, before the other claim comes into existence, or before it has become demandable. See in this connection Colin & Capitant, Cours Élémentaire De Droit Civil Français, Tome II Septième Édition (1932) p. 325, n. 346.

■ 6. Since Wainer's note was compensated and paid on March 27, 1933, by his deposits in the Canal Bank & Trust Company at that date, he had the right to demand it under section 74 of Act No. 64 of 1904, the Louisiana Negotiable Instruments Law, which provides that: "The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it."

7. Intervener alleges in article 16 of his petition: "That petitioner is entitled to the return of his note duly paid and cancelled, and is moreover entitled to his dividend of 30% on the sum of $2809.10, as an advance dividend to be deposited in the National Bank of Commerce, which has taken over the active business of the former Canal Bank & Trust Company, or the sum of $842.70 ($860.69 as corrected), leaving further dividends to be paid to petitioner in due course of liquidation."

The allegations of article 16 of intervener's petition are denied in article 16 of the answer, filed by the liquidators of the Canal Bank & Trust Company, and we fail to find in the statement of facts agreed upon by counsel in this case any admission as to the correctness of intervener's claim for dividends. Consequently, intervener has failed to prove his demand as to the dividends alleged to be due to him, and to fall due hereafter.

8. The liquidators for the Canal Bank & Trust Company have filed in the Supreme Court an exception of no cause of action, based upon the grounds that, on the face of the record, it appears that the intervener is using the plea of compensation as a cause of action, whereas this plea is only a plea in exception or in answer, and can only be used as a defense, and that, on the face of the record, it also appears that plaintiff in intervention herein is not asking for any substantial relief.

We have already disposed of the first ground of the exception of no cause of action in this opinion.

Plaintiff in intervention unquestionably is seeking substantial relief in this case, since he is praying for the return of his note for $20,000, which has been compensated and set

off by his deposits in the bank, and which is being held by the liquidators of the bank for collection in full as an asset of the bank.

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that there be judgment herein in favor of intervener, Harry Wainer, against H. G. Thompson, special agent of the state bank examiner, and John Finke, liquidator of the Canal Bank & Trust Company, ordering them and each of them to deliver to intervener, paid and canceled, the note for $20,000 in controversy in this case.

It is further ordered that any right that intervener may have to dividends accrued and to fall due in the course of the liquidation of the Canal Bank & Trust Company be reserved, and that the liquidators of said bank pay the costs of appeal and all costs of the lower court.

O'NIELL, C. J., concurs in the result, but is of the opinion that People's Bank v. M. & L. Drainage District, 141 La. 1009, 76 So. 179, should be overruled.

ST. PAUL, J., takes no part.