ODOM, Justice.
 

 The defendants prosecute this appeal from a judgment ordering the Canal Bank & Trust Company, now in liquidation, to permit plaintiff to repurchase a nonnegotiable New Orleans Clearing House Association, trustee, participation certificate in a loan to the state of Louisiana board of liquidation of the state debt, and to accept in full payment therefor the amount which plaintiff had on deposit in the Canal Bank & Trust Company and a tender of the difference between the amount on deposit and the par value of the certificate. In the bank’s answer it was alleged that the certificate had been pledged to the Reconstruction Finance Corporation, which was made a party to the suit by supplemental petition. The judgment ordered it and the liquidator of the Canal Bank to deliver the certificate to the plaintiff.
 

 The pertinent facts involved are that on November 15, 1932, the First National Bank of Ruston borrowed $26,592.43 from the Canal Bank & Trust Company, the loan transaction being handled as a sale and delivery by the plaintiff to the Canal Bank of ihe above-described- trustee certificate, with a repurchase agreement. The par or face value of the certificate is $26,592.43, and the loan by the Canal iBank to plaintiff was for that exact amount.
 

 The contract of sale and repurchase, which is referred to as the “repurchase agreement,” was attached to the certificate and it, as well
 
 *448
 
 as the certificate, was delivered to the Oanal Bank at the time the loan was made. It contains the following stipulations pertinent to the issue here involved:
 

 “In consideration of the agreement to repurchase hereinafter expressed, vendee (the •defendant) has this day purchased from the vendor (the plaintiff) the following securities hereinafter referred to as ‘securities’, to-wit: $20,592.43 New Orleans Clearing House Association Trustee Participation Cert. #451 dated 4/21/31 in a loan to the State of Louisiana Board of Liquidation State Debt, the same for the price and sum of Twenty Six Thousand, Eive Hundred Ninety-two dollars and 43/100, cash, receipt whereof said First National Bank, Ruston, La., hereby acknowledges and grants acquittance therefor, accordingly vendee (the defendant here) has agreed to sell to vendor (plaintiff here) and vendor has agreed to purchase from vendee, all the aforesaid securities for the price and :sum of Twenty Six Thousand, Five Hundred Ninety-two and 43/100 dollars, cash, with interest thereon at rate of 5% per cent per annum from date of this agreement until paid. Vendor (the plaintiff here) agrees to accept •delivery of the said securities and to pay the price therefor in cash at vendee’s head office in New Orleans, Louisiana, on (or before, at -vendee’s option) December 15, 1932.”
 

 A reading of the above discloses that the purchase of said certificate by the Canal Bank & Trust Company was made “in consideration of the agreement to repurchase hereinafter ■expressed,” and, further, that not only did the ■Canal Bank & Trust Company bind and obligate itself to sell said certificate back to the .First National Bank of Ruston at the face or par value thereof, plus interest from the date of the transaction to the date on which the resale might take place, but the Bank of Ruston bound and obligated itself to repurchase the certificate at the said price plus interest. So that the obligations assumed by the respective parties to the transaction were not optional, but unconditional.
 

 The resale agreement further provides that in ease the Bank of Ruston should become insolvent, adjudged a bankrupt, or in case proceedings should be taken to have it declared a bankrupt or to have it liquidated or to have a receiver appointed for it, “then this contract shall immediately become executory and the price of the sale due and payable, all without demand or notice or putting in default.” And further that “should the vendor (Bank of Ruston) fail or refuse to pay the price of the resale and accept delivery of the securities (in this case the certificate described above) as aforesaid, or when otherwise due hereunder, any money now or hereafter on deposit with, in possession of or under the control of or held by the vendee (Canal Bank) for any purpose whatsoever or in transit to or from vendee (Canal Bank) by mail or carrier, to the credit of or for account of vendor (Ruston Bank) shall at once stand applied to the payment of the repurchase price aforesaid and vendee is hereby irrevocably authorized to sell said securities or property in whole or in part at public or private sale without appraisement or recourse to judicial proceedings to the highest bidder for cash.”
 

 It is further provided that the Canal Bank may become the purchaser of the certificate at such sale and “receive and apply the proceeds thereof (1) to the payment of all costs and commissions of selling; (2) to the pay
 
 *450
 
 ment of the resale price in principal, interest and ten per cent (10%) attorney’s fees as hereinafter stipulated; (3) the balance, if any, to be paid to said vendor.”
 

 The instrument evidencing this resale agreement is a skeleton form with blanks filled in and contains the recital that in order to secure the due performance of its “obligations to repurchase the said securities and to pay the price thereof, when due, and to save and hold harmless the said vendee (Canal Bank), vendor (Ruston Bank) has delivered and does hereby deliver unto Canal Bank & Trust Company in pledge the things and property hereinafter referred to as ‘notes’, which are described as follows:” Then follows a blank space into which a description of notes or other securities might be written, but none are listed therein.
 

 Plaintiff alleged that at the time this transaction was entered into and at the maturity of the obligation to repurchase, it had a considerable amount of money on deposit with the Canal Bank, which deposit could, and, under the agreement, should have been applied to the repurchase price of said certificate, the total deposits amounting to «$25,441.20; that finally, on April 4,1983, the plaintiff bank tendered to defendant the sum which it had on deposit, «$25,441.20, and the further sum of $1,715.92, making a total of $27,157.12, the total amount then due on said repurchase agreement as of that date, which tender, it is alleged, was duly acknowledged by the defendant bank through its vice president, J. A. Bandi, but refused.
 

 It is alleged that the defendant bank went into liquidation on May 20, 1933, and the suit was brought against the liquidator.
 

 Plaintiff prayed for judgment ordering the liquidator to apply its deposit of «$25,441.20 to its credit and ordering it to accept its tender 'of $1,715.92, aggregating ,$27,157.12, the full amount due on its repurchasing agreement and ordering said liquidator to deliver to it the said certificate.
 

 Defendant, in answer, admitted that on April 4, 1933, plaintiff had on deposit in the Canal Bank the sum of $25,441.20, and that on said date a tender was made of that amount plus $1,715.92, aggregating $27,441.20, the entire amount due. It admitted its refusal to permit plaintiff to apply its balance in the bank as an offset against the amount due for the reason, among others, that the Canal iBank was then and had been since March 3, 1933, operating under a restricted basis due to proclamations issued by both the Governor of the state and the President of the United States, under which proclamations and regulations adopted, plaintiff’s deposit, or a portion thereof, was “immobilized” or “frozen,” for which reason the clause in the repurchase agreement providing that any money of plaintiff on deposit with or to its credit should “at once stand applied to the payment of the repurchase price aforesaid” was inoperative. But this defense is not urged either in oral argument or in brief, due no doubt to the hold ing in the Wainer Case, 178 La. 991, 152 So. 578.
 

 The main defense urged by the liquidator of the Canal Bank Is that the contract entered into by plaintiff and defendant, referred to as a “repurchase agreement,” was a sale of the certificate with right of redemption, and that plaintiff did not redeem or offer to redeem the certificate within the time limit specified. For which reason, it is contended that
 
 *452
 
 on April 4, 1933, when plaintiff asked that it be given credit for the amount of its deposit on the repurchase price of the certificate and made a tender of the difference between that amount and the whole amount due, the certificate was the property of the defendant. In other words, that plaintiff had lost its rights under the contract.
 

 “The right of redemption is an agreement or paction, by which the vendor reserves to himself the power of taking back the thing sold by returning the price paid for it.” Civ. Code art. 2567.
 

 “If that right has not been exercised within the time agreed on by the vendor, he can not exercise it afterwards, and the purchaser becomes irrevocably possessed of the thing sold.” Civ. Code, art. 2570.
 

 “The time fixed for the redemption must be rigorously adhered to; it can not be prolonged by the judge.” Civ. Code, art. 2569.
 

 These articles of the Code and numerous decisions, among them being Foster v. Carnes, 177 La. 99, 147 So. 697, are cited in support of defendant’s contentions.
 

 Articles 2569, 2570, and the cases cited would support defendant’s contention if the contract between the parties came within the meaning of article 2567 of the Civil Code, which defines a sale with right of redemption. But the contract here involved is not of that character.
 

 A sale with right of redemption is one by which the vendor reserves to himself the power of taking back the thing sold by returning the price within a specified time. But he is not bound to take it back. He may exercise his option to take the thing back if he chooses to do so, but the vendee cannot compel him to exercise that option. If he fails to exercise his right, the vendee becomes “irrevocably possessed of the thing sold.”
 

 In this case, the Ruston Bank, which was the vendor, bound and obligated itself unconditionally to repurchase the certificate from the Canal Bank, the vendee, at the price for which it was sold, plus interest at 5% per cent, from the date of the sale to the date of the repurchase, and the Canal Bank, the vendee, likewise bound itself unconditionally to resell the certificate to the Ruston Bank at said price, plus interest. There was no mere option reserved by either party, but each was unreservedly bound, the Ruston Bank to repurchase' and the Canal Bank to resell the certificate.
 

 That it was never intended that the Canal Bank should become “irrevocably possessed” or the absolute owner of the certificate upon the Ruston Bank’s failure to pay the price within the time specified is too plain for argument, and this for two reasons. The first, and that is sufficient, is that the contract provides that in case the Ruston Bank should fail or become insolvent, or should involuntary bankruptcy proceedings be taken against it, or should it be thrown into liquidation, or “should the vendor (the Ruston Bank) fail or refuse to pay the price of the resale and accept delivery of the securities (the certificate) as aforesaid,” then whatever deposits the Ruston Bank had to its credit should “stand applied to the payment of the repurchase price as aforesaid and the vendee is hereby irrevocably authorized to sell said securities * * * at public or private sale * * * and the
 
 vendee
 
 (the Capal Bank)
 
 map decorne
 
 
 *454
 

 the purchaser at said, public or private sale.”
 
 (Italics ours.)
 

 If it had been intended that the Canal Bank should become “irrevocably possessed” of the certificate upon plaintiff’s default, there was no necessity for the provision that upon the ■default the resale contract should become ex-ecutory and that the Canal Bank might proceed to sell it and become the purchaser of it. If it became the owner of the certificate upon plaintiff’s default, it could not subsequently purchase it.
 

 The second reason is that when the Ruston' Bank demanded its right to repurchase the certificate, the Canal Bank did not refuse the demand on the ground that the Ruston Bank had defaulted and for that reason had lost its right to repurchase. Plaintiff alleged that long after the maturity of the obligation to repurchase, its president requested the Canal Bank to “offset the obligation to repurchase said certificate with the amount which the First National Bank of Ruston, La., had.on deposit in the Canal Bank & Trust Company and to permit it * * * to pay the small balance due on said repurchase agreement and take back said certificate of deposit; that the officers of the Canal Bank & Trust Company declined to permit said offset ‘because of the Federal restrictions under which it was operating, that would be making a distinct preference.’ ”
 

 These allegations were admitted in defendant’s answer.
 

 It is further alleged that on April 4, 1933, plaintiff made a real tender to the Canal Bank of the amount it had on deposit plus the balance necessary to make up the full amount under the repurchase agreement; that the tender was acknowledged by the vice president with the statement that the same was not accepted “for the reason that he wished to refer the matter to the executive committee * * * for such action as they might desire to take.” It is alleged also that on May 15, 1933, it was agreed that attorneys for 'plaintiff submit the matter to the United States Secretary of the Treasury for a ruling, which he declined to make, but stated that the “Treasury could not grant authority to> the First National Bank of Ruston to 'offset its deposit against Canal Bank & Trust Company as the question was one for determination under the laws ‘of Louisiana and the Treasury could not determine such question! of law.”
 

 These latter allegations are contained In articles IX and X of plaintiff’s petition, and are admitted by defendant as written.
 

 The question which the Secretary of the Treasury declined to pass upon was settled by this court in the Wainer Case, supra.
 

 Clearly, this was not a sale with right of redemption. It was more in the nature of a pignorative contract. A similar transaction was involved in the case of In re Liquidation of Canal Bank & Trust Company (Intervention of Bank of Picayune), 179 La. 1018, 155 So. 760, 764, where the court said: “Here we have an inviolable contract of pledge and repurchase.” That case, in principle, is not distinguishable from this one, in so far as this, particular defense is concerned.
 

 Another defense urged by defendants ik. that “plaintiff bank never repurchased and never offered or attempted to repurchase- the certificate in accordance with the terms ®£ tha contract.”
 

 
 *456
 
 ' ’ This defense, like the other one discussed, has no merit. The loan by the Canal Bank to the plaintiff bank was made on November 15, 1932, and, as already stated, the loan transaction was handled as a sale of the certificate with right to repurchase by December 15, 1932, and the basis of this defense is that plaintiff did not offer to repurchase the certificate within that time, or within a thirty-day extension of that time granted by the Canal Bank, and therefore plaintiff's rights under the repurchase agreement lapsed long before the offer was made.
 

 While there was no formal, specific' agreement on the part of the Canal Bank to extend the time allowed plaintiff to repurchase the certificate, yet the correspondence between plaintiff and defendant shows clearly that b'oth understood that the time was extended and that the matter of finally closing the transaction was held in abeyance. On January 12, 1933, the Canal Bank wrote plaintiff calling to its attention that the repurchase agreement would be due and payable on the 15th. On the following day, plaintiff wrote defendant requesting renewal of the obligation. Plaintiff also asked definite information about payment of the certificate by the clearing house, stating that if the certificate could then be collected, it would not want an extension. On - January 16th plaintiff wrote defendant that it would like to continue the use of this line of credit for a while longer. On the following day the defendant wrote plaintiff as follows:
 

 “The certificates pertaining to the loan to .the Board of Liquidation of the- State Debt, ■which we understand you have agreed to include in the recent bond purchase arrangement, we are holding in abeyance for a few days as the committee handling the matter is working up a plan which will result in changing these certificates of participation for actual bonds, and I am assuming it is your desire to have us make this exchange not only with reference to these certificates that you have just sent us, but also the certificate of participation which we are holding under the repurchase agreement from your bank. Should this not be correct you will, of course, write us promptly, and we will advise you as soon as the exchange is made.”
 

 On February 21st, plaintiff wrote defendant again asking information whether defendant “would be willing to handle the full amount of the bond participation under a repurchase agreement from us.” And on March 3d, defendant wrote plaintiff as follows:
 

 • “Please do not think I have purposely neglected your recent letters- pertaining to the State obligations which we have under a repurchase agreement from your bank. I fully intended to write you a few days ago suggesting that we place our repurchase agreement transaction on the bills-payable basis, with a suitable margin, as that would be more satisfactory to us.
 

 “You of course realize that the original repurchase transaction was intended to be of a more or less temporary need and we were glad to accommodate you in that way because we anticipated it would be only for a short time.
 

 “Now that the circumstances have changed so materially, it will suit us much better to have it in the form of Bills-payable, and I will write you further about it within the next day or so as soon as we can clear away
 
 *458
 
 some of the fog that is now surrounding the situation. At that time I shall be in a better position to advise you what attitude will be taken by our bank with respect to the other State obligations that you have free and unpledged.”
 

 On March 6th, Mr. Hodge, president of the plaintiff bank, called at the defendant bank, which was then closed, and requested that the offset be allowed, and offered to pay the balance due.
 

 Neither then nor later did the officers of the defendant bank contend that plaintiff had lost its rights under the repurchase agreement. On April 4th, when plaintiff made the tender, no such contention was made, but, on the contrary, the offset was refused because plaintiff’s balance in the bank was “frozen.”
 

 Another defense made by both the defendant bank and the Reconstruction Finance Corporation is that a pignorative contract cannot be invoked to the prejudice of ,third persons, citing Beard v. Nunn, 172 La. 155, 133 So. 429, and that compensation cannot take place to the prejudice of rights acquireu by third persons, citing Civ. Code, art. 3183.
 

 These propositions are indisputable, but they have no application here for the reason that the certificate is not a negotiable instrument. It provides on its face that it is “transferable on the books of the Trustee by the registered holder thereof in person, or by duly authorized attorney.” Plaintiff was the registered owner of it. It was never transferred on the books of the trustee. The Canal Bank requested plaintiff to execute a power of attorney authorizing it to make the transfer, but plaintiff refused to comply with the request. The certificate being nonnegotiable, the Reconstruction Finance Corporation took it in pledge subject to the rights of the plaintiff and the obligations of the Canal Bank under the repurchase agreement.
 

 The original certificate involved was dated April 21, 1931, and bore the number 451. For some reason not fully explained in these proceedings, the New Orleans clearing house on March 1, 1933, issued to plaintiff another participating certificate for the same amount as the first one, which latter bore the number 423, and was substituted for the first. Upon receipt of the substituted certificate, plaintiff indorsed it in blank and delivered it to the Canal Bank, which in turn delivered it in pledge -to the Reconstruction Finance Corporation. It was the latter certificate which the trial judge ordered delivered to plaintiff.
 

 Finding no error in the judgment appealed from, we affirm it with all costs.