## RECONSTRUCTION FINANCE CORPORATION v. COTONIO.*

### No. 17040.

Court of Appeal of Louisiana. Orleans.
Oct. 31, 1938.

Dufour, St. Paul, Levy & Miceli and Philip E. James, all of New Orleans, for appellee.

Theodore Cotonio, of New Orleans, in pro. per.

WESTERFIELD, Judge.

The Reconstruction Finance Corporation, a corporation organized under an Act of Congress approved January 22, 1932, and amended July 21, 1932, 15 U.S.C.A. § 601 et seq., brought this suit against Theodore Cotonio alleging that it was "the holder and owner for valuable consideration, before maturity" of a certain promissory note executed on December 14, 1932, by Theodore Cotonio, in favor of the Hibernia Bank & Trust Company, for the sum of $500 and maturing ninety days from date with 8% interest from maturity and 10% attorney's fees; that the note is past due and unpaid notwithstanding amicable demand. The defendant filed an exception or plea in abatement, in which the authority of counsel to represent plaintiff is challenged upon the ground that the suit was brought by a member of the law firm of Dufour, St. Paul, Levy & Miceli, who was not authorized so to do, the said firm not being the duly appointed counsel of plaintiff as defendant avers "from information and belief". The exception was overruled and defendant answered setting up in effect that the plaintiff was not the holder in due course and that in consequence he was entitled to plead in compensation the sum of $234.22, the amount of a deposit which he had to his credit on the books of the Hibernia Bank & Trust Company on March 14, 1933, the date on which the note matured and that as to the balance due on the note he had frequently tendered payment and, therefore, should be relieved of interest and costs.

There was judgment below in favor of the plaintiff as prayed for and defendant has appealed.

On the trial of the case defendant called for a return to a subpœna duces tecum which he had caused to be directed to George S. Buskie, the manager of the plaintiff corporation in the city of New Orleans, ordering him to produce, among other things, "all resolutions or duly certified copies thereof evidencing the appointment or selection of attorneys to appear in behalf of plaintiff corporation in the Courts of New Orleans, also all resolutions of its Board of Directors relating to this suit." Mr. Buskie produced a letter addressed to him by Mr. T. E. Parks, Administrative Assistant of the Agency Division of the Reconstruction Finance Corporation, dated Washington, D. C., March 25, 1935, which authorized counsel for the Hibernia Bank & Trust Company in Liquidation, Messrs. Dufour, St. Paul, Levy & Miceli, to bring the suit and which concluded with the paragraph:

"We assume you have obtained a letter of assurance from the Liquidators' attorneys that they will look only to the Liquida-

tion for the payment of their fees and not to the Corporation, and will exert no lien in connection therewith. Delivery of the collateral is conditioned upon the correctness of this assumption."

Defendant contends that the letter is insufficient to prove the authority of counsel and points to the appropriate sections of the Act of Congress incorporating plaintiff corporation which he contends vests all authority for the employment of attorneys in its Board of Directors.

In argument in this court, defendant renewed his objection to the appearance of present counsel, contending most earnestly that the court, a qua, erred in failing to maintain his exception. In support of his position he cites the case of Bender v. McDowell, 46 La.Ann. 393, 15 So. 21. In that case, which was a suit to revive a judgment, the defense was that no valid judgment had been originally rendered because defendant had never been cited. It appeared that citation had been waived by attorneys purporting to represent the defendant whose authority was challenged. The court, after reviewing all previous authorities, held that the presumption that counsel are authorized to represent the parties in whose behalf they appear can only be overcome by an affidavit, but that such affidavit was not a condition precedent to the administration of proof under the plea of want of authority, saying [page 23]:

"Taken all in all, the conclusion is that a certain degree of sanctity attaches to the act of an attorney at law, as an officer of court, which raises a legal presumption that it was authorized, and imposes on the client denying his authority the duty of supporting his denial with an oath, in order to overcome that presumption and put the opposite party to the proof. We find no case which goes to the extent of holding that the making of such an affidavit is a condition precedent to the administration of any proof under his plea."

There, as in most of the other cases, in this jurisdiction at least, the authority was challenged by the client. Here, it is the defendant. In some jurisdictions defendants are not permitted to question the authority of opposing counsel. Doolittle v. Gookin, 10 Vt. 265; Baldwin v. Foss, 14 Neb. 455, 16 N.W. 480. Certainly such pleas should be received with caution. The only case which we have been able to find which presents a similar situation is that of Bonnefoy et al. v. Landry et al., 4 Rob. 23. There it was said:

"As to the plea in abatement, we are of opinion that the attorney should not have been ruled to exhibit his authority, on an affidavit such as that made by the defendants. We have said that we will not presume that any gentleman of the profession would commence a suit unless duly empowered to do so, and that we will not require him to produce the power under which he acts, unless on a suggestion supported by affidavit, that such power was wanting. (Hayes v. Cuny), 9 Mart. [O.S. 87], 88; [Johnson v. Brandt,] 10 [Mart., O.S.] 638. The defendants in this case made oath that they are under the impression, and verily believe, that the attortorney who brought the present suit acted through error, and without sufficient authority. One of them states that his impression and belief arise from an examination of the facts set forth in their plea in abatement; but he swears to none of those facts, which, even if taken as true, do not necessarily lead to the conclusion that this suit was brought without authority. Affidavits such as the one made by the defendants could be resorted to without danger on every occasion, and would create serious delay and inconvenience, especially when the parties are living at a distant place. The affidavit should, in our opinion, state facts or circumstances sufficient to render it probable that the action is unauthorized, and thus destroy the contrary presumption. In many cases it might be impossible to prove a verbal or written authorization without taking out a commission. If it were sufficient merely to swear to an impression or belief, the existence of which in the mind of the party could never be disproved, the presumption in favor of the authority of attorneys at law would be entirely done away with, as such an affidavit might be made by every party whose object was delay."

Here, as in the cited case, the plea of want of authority, though sworn to, is based upon information and belief and, if, as counsel contends, the letter purporting to authorize present counsel to represent the plaintiff be insufficient or informal, we are, nevertheless, of the opinion that the presumption of authority which counsel enjoy has not been rebutted, consequently, they are under no obligation to make proof of their right to bring this action. The

plea of want of authority was properly overruled.

The final question presented involves the right of defendant to plead in compensation the amount of his bank deposit. It appears that on February 5th, 1933, the Hibernia Bank & Trust Company borrowed from the Reconstruction Finance Company $10,000,000, pledging as security for the loan, a large number of notes issued to it by its depositors and among them, that of the defendant for $500. These notes contained a clause, the effect of which was to pledge as security for the payment of the note "all securities and/or property * * * and every balance of deposit account" which the maker had to his credit with the bank. The bank went into liquidation on May 20, 1933, though it had been closed from March 1, 1933, until March 3, 1933, when it was reopened on a restricted basis until the date of liquidation, withdrawals by depositors not being permitted beyond 5% of the balance as of March 1, 1933. The position of the bank during the interim from March 1, 1933, to the date of its liquidation, May 20, 1933, being controlled by proclamations of the President of the United States and orders of the State Banking Department. See Intervention of Wainer, In re Canal Bank & Trust Company in Liquidation, 178 La. 961, 962, 152 So. 578, for details concerning Canal Bank & Trust Company, which were similar. It is defendant's contention that on March 14, 1933, when his note became due that compensation to the extent of his deposit, $234.22, automatically took place, the bank not having gone into liquidation until May 20, 1933, citing in support of his contention the Wainer Case, supra. The Wainer Case, however, is not in point for there the entire controversy was between the bank and its depositor, no third person being involved. The issue here is between the pledgee and the maker of the note. The plaintiff became the pledgee of the defendant's note on February 6, 1933, thirty-six days before its maturity.

In intervention of Gay-Sullivan & Co., Inc., In re Liquidation of Canal Bank & Trust Company, 182 La. 421, 162 So. 31, in speaking of the position of a holder in due course, the Supreme Court said [page 34]:

"The legal consequence is that the intervener cannot now invoke those pleas and equities which might have availed it had the bank remained the holder and owner of the note and the collateral. It is cut off by the Negotiable Instruments Law, section 57 of which reads as follows:

"'A holder in due course holds the instrument free from * * * defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.'

"Therefore, if it be conceded as counsel contend, that where a bank holds a note of an individual who has on deposit therein funds sufficient to pay the note at its maturity, compensation or set-off takes place even though the bank be in liquidation when the note falls due, the intervener in this case is not relieved, because rights of a third party are involved. The bank transferred the note and collateral to the Reconstruction Finance Corporation, which held them at the time the bank was closed for liquidation, and at the time the note fell due. Compensation cannot take place to the prejudice of the rights acquired by third persons. When the Reconstruction Finance Corporation acquired the note, it acquired the right to enforce payment of it in full by the intervenor, who was the maker and principal obligor, regardless of any equities which may have existed between the bank and the intervener."

In Re Canal Bank & Trust Company in Liquidation, Intervention of Orleans Homestead Association, 186 La. 366, 172 So. 421, the Court said [page 422]:

"Counsel argues that because the bank owned the note, compensation took place and that intervener is entitled to plead set-off, and cites the Wainer Case reported in 178 La. 961, 152 So. 578, and First National Bank of Ruston v. Canal Bank & Trust Co., 181 La. 445, 159 So. 711, in support of his theory. In those cases it was held that a depositor was entitled to offset his debts to the bank with his frozen deposit. But neither of those cases has any application here, because in the Wainer Case the rights of a third person were not involved, and in the Bank of Ruston Case, while the R F C became the holder of the participation certificates before their maturity dates, these certificates were nonnegotiable, for which reason the Bank of Ruston was entitled to plead all such equities against the R F C as it had against the Canal Bank & Trust Company."

See, also, Bank of St. John v. Hibernia Bank & Trust Company et al., 189 La. 1, 179 So. 15.

Defendant argues at length and with great insistence that the facts in the instant case are distinguishable from those which obtained in the Orleans Homestead, Gay-Sullivan and Bank of St. John Cases, but we fail to see any difference in principle. It would appear that an invidious distinction is made between those borrowing depositors whose notes were not pledged as in the Wainer 'Case, where the bank deposit was set-off against the loan, and those whose notes had been pledged to the Reconstruction Finance Corporation, as in the present and other similar cases, where compensation of the deposit is not permitted. But one who issues a negotiable promissory note should contemplate this possibility, for it is a "courier without luggage". Third persons acquiring it for value and in good faith, before maturity, need not concern themselves with any infirmities not disclosed upon the face of the note. It would have been to the advantage of defendant, under the circumstances, if the Hibernia Bank had kept the note in its portfolio, but since it did not and the interest of a third person is involved, a holder in due course, defendant, the maker of the negotiable note, and not the third person, must suffer whatever loss is entailed by the negotiation of the note by the payee.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.