PLOTKIN, Judge.
Plaintiff, First National Bank of Commerce (FNBC), appeals two district court opinions allowing defendants, Ernest J. Danjean d/b/a Dan’s Food Store (Dan’s), and Jean E. Breaux d/b/a Capital Savings Supermarket (Capital), to set-off their members’ buying deposits in Louisiana Grocers’ Co-operative, Inc. (LGC) against the open account indebtedness each owed to LGC.
LGC, a co-operative of local grocery stores organized as a Louisiana corporation, purchased items in volume for resale to members. LGC was financed by its members, who bought stock in the corporation and made member buying deposits, and by loans from FNBC. On August 23, 1985, LGC filed for relief under Chapter 11 of the United States Bankruptcy Court; at that time LGC owed FNBC $3,124,925 secured by the assignment of accounts receivable and a mortgage on LGC’s inventory. FNBC was authorized to collect accounts receivable due LGC.
FNBC filed suit against Dan’s to collect on its account receivable debt of $5,367. At the trial on October 30,1986, the parties stipulated to the amount of the debt and to the fact that Dan’s had a member buying deposit of $5,961 with LGC. Judgment was rendered May 18, 1987, in favor of Dan’s and against FNBC dismissing all its claims. FNBC filed a similar suit against Capital to collect an account receivable of $10,585; the parties stipulated as to the debt and to Capital’s balances in Class B stock of $9,785, Class A stock of $1500, in temporary handling fees of $23,323, and in member’s buying deposit of $27,788. On May 7, 1987, a judgment was rendered in favor of Capital and against FNBC dismissing its claims.
FNBC appealed both judgments, and on September 1, 1987, the Dan’s appeal was consolidated with the Capital appeal. The issues in the two cases are identical. Both cases were decided by a stipulation of facts; only questions of law are at issue on this appeal.
Appellate review of the findings of the trial court is limited to a determination of whether those findings are clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Although this Circuit has found that where the trial court’s judgment was based on pleadings, depositions and stipulations of fact, appellate review was de novo (see Schwarz v. Bourgeois, 422 So.2d 1176, 1178, rehearing denied, (La.App. 4th Cir. 1982), writ denied, 429 So.2d 153 (La.1983); and Jones v. New Orleans Public Belt Railroad Commission, et al, 464 So.2d 919 (La.App. 4th Cir.1985)), the Louisiana Supreme Court has recently rejected that view. Virgil v. American Guarantee and *147 Liability Insurance Company, 507 So.2d 825 (La.1987); Bruno v. Security General Life Insurance Company, 522 So.2d 1242 (La.App. 4th Cir.1988).
The issue presented in this appeal is whether Capital and Dan’s are entitled to set-off their debts to LGC against the funds each had in its members’ buying deposit, and in Capital’s case the balance in stocks and fees. Recently the First Circuit decided a similar case, FNBC v. Arthur Dufrene and Kim Dufrene d/b/a Dufrene Super Market, 525 So.2d 298 (La.App. 1st Cir.1988). In that case the First Circuit held compensation and/or set-off were not available to Dufrene. We agree with our brethren on the First Circuit find that according to La.R.S. 12:145(F), La.C.C. art. 1893 and the by-laws of LGC, Capital and Dan’s are not entitled to use funds deposited with LGC to off-set their debt with the corporation.
The by-laws of LGC provide the means by which the corporation obtained necessary funds or capital to pay expenses of operations and the methods by which members could withdraw those funds. By-law article 2.4 (Requirements) establishes that each member is required to purchase Class A and Class B stock and to participate in the member’s buying deposit program. Class A stock entitled a stockholder to vote in the management of the corporation; each member owned three shares with a par value of $500. per share. Class B stock was acquired by assessing each member 2% of each week’s purchase until the member had a balance of two and one/half times his average weekly purchase. In order to redeem Class A stock, a member must submit his stock to the co-operative; Class B stock was not redeemable for five years from the date of issuance and after five years, a member may redeem only the value in excess of two and one-half times average weekly purchases. Neither stockholder in the case at bar attempted to redeem his stock prior to August 23, 1985. Once the corporation had filed for relief under Chapter 11, La.R.S. 12:145(F) prohibits shareholders from receiving distributions until after the debts and liabilities of the corporation are met.[1] Consequently, Capital cannot redeem Class A and Class B stock until after the creditors are satisfied.
Article 4 of the by-laws established a member’s buying deposit “primarily utilized to finance inventory requirement.” Art. 4.4 provides the method for withdrawals from the deposit account: upon 30 days written notice a member could withdraw his excess over the minimum required amount. Withdrawal of the total amount was permitted only by a former member within 240 days of his withdrawal. Both Capital and Dan’s stipulated that they did not withdraw from LGC by the time of receipt of notice from FNBC.
In the financial statement of LGC the members buying deposits (as well as Class A and Class B stock) were classified as equity, not as an indebtedness of the corporation. In the Summary of Significant Accounting Policies of LGC’s consolidated financial statement of 1983 the following notes on the members buying deposit are provided:
Amounts deposited in excess of the requirements ... are withdrawable upon request of the members. Such excess deposits are included in members’ equity and have not been reclassified as current liabilities.
Thus LGC used the members’ buying deposit and any excess subject to withdrawal as part of the equity of the corporation. It was on the strength of this financial statement that LGC received loans from FNBC.
The temporary handling fee was a percentage of each member’s monthly invoice which the co-op recorded as a charge. LGC treated the fee as income on their books and members deducted it on their income tax as an expense. Capital argues that the temporary handling fee was a debt to members and that the fact that LGC kept individual records of each member’s temporary *148 handling fee indicates LGC agreed the fee was a debt. Mr. Rosenbaum, the former accountant of LGC now handling the liquidation, stated in his deposition that the purpose of keeping track of the temporary handling fee was “to give patronage dividends back to the members based on how much temporary handling fee they had contributed to the co-op” when LGC had profits. Clearly, the temporary handling fee is not an indebtedness of the co-op.
Capital and Dan’s had the burden of proving by a preponderance of evidence their rights to set-off. Coburn v. Commercial National Bank, 453 So.2d 597, 605 (La.App. 2d Cir.1984), writ denied, 457 So.2d 681 (La.1984); Hughes Realty v. Pfister, 245 So.2d 757 (La.App. 4th Cir. 1971); Olinde Hardware and Supply Co. v. Ramsey, 98 So.2d 835 (La.App. 1st Cir. 1957). Both defendants relied on art. 4.6 of the By-Laws which provides:
The member’s Buying Deposit Account shall serve as an escrow account to guarantee the obligations of the member to the Co-op.
However, article 4.6 must be read in conjunction with article 4.2 which states that a member must withdraw from LGC before he can be reimbursed from the member buying deposit.
La.C.C. articles 1893 and 1894 treat situations in which compensation may or may not take place. Article 1893 provides:
Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of functional things identical in kind and these sums or quantities are liquidated and presently due.
In such a case, compensation extinguishes both obligations to the extent of the lesser amount.
Because the defendants had not withdrawn from the co-operative in the case at bar, the sums were not liquidated and presently due. Beninate v. Licata, 473 So.2d 94 (La.App. 5th Cir.1985), writ denied 477 So. 2d 1124 (La.1985).
Capital and Dan’s argue that according to jurisprudence they have a right to apply funds held by LGC in payment of a debt or as a set-off. They rely on cases involving the Canal Bank & Trust Co. in 1934 when its assets were frozen by proclamation of the President of the United States; in several cases the court found a set-off situation when a borrower owed the bank but could not pay his debt with money the bank was holding because the bank’s assets were frozen. In re Canal Bank & Trust Co., Intervention of Wainer, 178 La. 961, 152 So. 578 (1934); In re Canal Bank & Trust Co., Intervention of Bank of Picayune, 179 La. 1018, 155 So. 760 (La.1934); Frierson & Co., Inc., v. Canal Bank & Trust Co. et al., 180 La. 502, 156 So. 803 (La.1934). In none of these cases was the bank in liquidation; therefore, the rights of a third party were not involved. It is a fundamental principle of Louisiana law that compensation cannot take place to the prejudice of third parties. La.C.C. art. 1899. Thus, the cases cited do not apply to the case at bar.
La.C.C. article 1894 governs obligations not subject to compensation. It provides in pertinent part:
Compensation does not take place ... if one of the obligations is to return a thing of which the owner has been unjustly dispossessed, or is to return a thing given in deposit or loan for use, or if the object of one of the obligations is exempt from seizure.
The members buying deposit was used to finance inventory. It was a deposit or loan for use. Therefore under La.C.C. art. 1894 compensation does not take place.
Accordingly, because the funds of Capital and Dan’s held by LGC are classified as equity in LGC, compensation is denied pursuant to La.R.S. 12:145(F). Furthermore, neither Dan’s nor Capital had withdrawn from LGC prior to August 23, 1985, so neither had a debt that was liquidated and presently due according to the La.C.C. art. 1893 and the by-laws of LGC. Therefore, the judgment of the trial court is reversed, and judgment is rendered in favor of FNBC and against Capital in the amount of $10,585 and against Dan’s in the amount of *149 $5,367, plus interest from the date of judicial demand.
REVERSED AND RENDERED.

. La.R.S. 12:145(F) provides:
(a)ny net assets remaining, after paying all debts and liabilities of the corporation, including all costs and expenses of the liquidation, shall be paid by the liquidator to the shareholders according to their respective rights and preferences.