BRUNOT, Justice.
 

 The intervener is a nonresident corporation, organized under the laws of Mississippi, and domiciled and doing business in that state. On December 18, 1932, it entered into a written agreement with the Canal Bank & Trust Company for the sale to said bank of certain described bonds for $75,000, the par value thereof, and for the repurchase of said bonds, on or before March 15, 1933, for the same price plus interest thereon at the rate of 5% per cent, per annum. To guarantee its obligation to repurchase said bonds, intervener deposited with the Canal Bank & Trust Company other enumerated and described bonds of the par value of $32,000, and also agreed that “any securities or property now or hereafter in the possession or under the control of or held by vendee for any purpose whatsoever or in transit to or from vendee by mail or carrier, to the credit of or for account of vendor shall and are hereby declared to be additionally pledged as security hereunder.” On or about December 19, 1932, the intervener paid the Canal Bank
 
 &
 
 Trust Company $5,000, on account of the repurchase price of said bonds, and received from said bank certain of the said bonds of the par value of $5,000. On or about March 9, 1933, the intervener paid the Canal Bank & Trust Company $35,000, on account of the said repurchase agreement, and the bank released from its pledge and surrendered to intervener certain other 'bonds of the par value of $51,000, retaining in pledge bonds of the par value of $51,000. It is shown that all accrued interest on the repurchase price, or on so much' of it as remained unpaid after crediting the two payments mentioned supra, was regularly deducted by the bank from intervener’s funds on deposit therein. It is shown that intervener, in anticipation of its obligation to fully pay the repurchase price of said bonds, on the maturity date of the repurchase agreement, had accumulated a cash balance on deposit in the Canal Bank & Trust Company of $21,321.83, which, to the knowledge of the officials of the bank, was to be applied toward the payment of the repurchase price of the bonds.
 

 On March 15, 1933, the due date fixed in the repurchasing agreement, and again on March 17, 1933, the intervener, through its officials, demanded that the Canal Bank & Trust Company apply its balance in said bank to its obligation to redeem its bonds, and offered to pay said bank $13,g/8.17 in cash, the difference between intervener’s actual balance in the bank and the sum of the unpaid balance then due the bank under the repurchasing agreement. The bank refused to comply with intervener’s demand or to accept its offer. Thereafter, on May 20, 1933, the Canal Bank & Trust Company was taken over by Hon. J. S. Brock, state bank commissioner, who, through Harry G. Thompson, special agent in charge, and John F. Finke, as coliquidator, were regularly appointed, confirmed, and qualified as such, and are now lawfully in charge of the property, records, and affairs of said bank and are liquidating the same.
 

 Following these proceedings, the Bank of Picayune intervened and prays that:
 

 “Hon. J. S. Brock, State Banking Commis
 
 *1021
 
 sioner, through Harry G. Thompson, Special Agent in Charge, and John F. Finke, Liquidator, be cited to show cause, if any they can, in open court, at a day and hour to be fixed, why they be not ordered and required to accept from intervenor the sum of thirteen thousand, six hundred and seventy-eight dollars and seventeen cents ($13,678.17) and forthwith surrender and deliver to intervenor all of the bonds with coupons attached thereto, more particularly described in paragraph XIII of this petition of intervention.”
 

 By a supplemental and amended petition of intervention, the Canal Bank & Trust Company, in liquidation, and the Reconstruction Finance Corporation were made parties defendant in these proceedings, and, as to them, the prayer of the petition of intervention is' reiterated. The original and supplemental petitions of intervention were answered by the respondents. The issues were heard, argued, and submitted, and judgment was rendered in favor of the intervener and against all of the respondents, as prayed for in intervener’s petitions. From this judgment Hon. J. S. Brock, state bank commissioner, and the Reconstruction Finance Corporation appealed.
 

 It is conceded that this case presents the same question of compensation, or offset of deposits against the liability of the depositor to the bank, as was presented in the case entitled In re Liquidation of Canal Bank & Trust Co. (Intervention of Harry Wainer), reported in 178 La. 961, 152 So. 578, 579, in which case an application to the Supreme Court of the United States for certiorari was recently denied by that court. The only difference in the facts of the two cases is that, in the Wainer Case, the obligation to the bank was represented by a note, while in this case the obligation to the bank is represent-: ed -by a repurchasing agreement, and in the Wainer -Case the maker and indorser of the note had in their combined deposits in the bank sufficient funds to pay the note, while in this case the sum of the difference between the intervener’s indebtedness and deposit was tendered to the bank in cash.
 

 From the decision in the Wainer Case we quote the following:
 

 “On March 1, 1933, H. Wainer & Co. had on deposit with the Canal Bank
 
 &
 
 Trust Company the sum of $18,490.45, and H. Wainer, individually, had on deposit with that bank the sum of $5,551.02.
 

 “From March 1, 1933, until March 20, 1933, the Canal Bank & Trust Company remained closed and did no business, except that on Friday March 3, 1933, pursuant to a resolution adopted by the New Orleans Clearing House Association, with the approval of the state banking commissioner and the acting Governor of the state, permitted withdrawals by its depositors not exceeding 5 per cent, of the -balance to the credit of the depositors as of March 1, 1933. During this period the Canal Bank & Trust Company remained closed, except as above stated, acting under the orders of the state authorities and the Proclamations of the President of the United States, of date Márch 6 and March 9, 1933 (see 12 USOA § 95 note), declaring and extending a national banking holiday.
 

 “On March 10, 1933, the President by Executive Order (see 12 USCA § 95 note) authorized the Secretary of the Treasury, under such regulations as he may prescribe, to
 
 *1023
 
 permit any member bank of the Federal Reserve System to perform any and all of its usual banking functions.
 

 “The President in this Executive Order further directed that all banks who are members of the Federal Reserve System, desiring to reopen for the performance of all of their usual or normal banking functions, should apply for a license therefor to the Secretary of the Treasury.
 

 “The Canal Bank & Trust Company was at that time a member of the Federal * Reserve System, and promptly applied for a license to be permitted to reopen for the performance of all its usual and normal banking functions, but was refused a license by the Treasury Department.
 

 “On March IS, 1933, the Secretary of the Treasury issued and promulgated a regulla-, tion, designated as No. 27, in which he authorized any bank which was a member of the Federal Reserve System, and which was not licensed to reopen for the purpose of its usual banking functions, to permit withdrawals by depositors and payments to creditors of such percentage of amount due to them, not exceeding 5 per cent., as it may determine with the approval of the appropriate state authorities.
 

 “Thereafter the Canal Bank & Trust Company, with the approval of the state banking commissioner, permitted withdrawals by depositors not exceeding 5 per cent, of the amount to their credit 'as of the close of business on March 1, 1933.
 

 “Prior to March 27, 1933, H. Wainer & Co. withdrew all of the 5 per cent, balance to its credit as of March 1, 1933, $924.52.
 

 “The Canal Bank & Trust Company notified its depositor that it would not permit the withdrawal of the remaining 95 per cent, of its balance, $17,537.85.
 

 “On March 27, 1933, the Canal Bank
 
 &
 
 Trust Company made available and permitted H. Wainer, individually, to withdraw 5 per cent, of the balare to his credit as of March 1, 1933, namely, $277.50. All of this amount the depositor withdrew, except the sum of $57.65.
 

 “The remaining 95 per cent, to his credit as of March 1,1933, $5,273.47, the Can'al Bank
 
 &
 
 Trust Company notified him he could not withdraw.
 

 “On the date on which the note of H. Wainer & Co., indorsed by H. Wainer, fell due, March 27, 1933, H. Wainer
 
 &
 
 Co. sent the Canal Bank & Trust Company two checks, .one for the sum of $2,500 and the other for the sum of $17,500, claiming that they were entitled to pay, compensate or offset the note with these checks. The offer of H. Wainer & Co. and H. Wainer was refused, and the checks were subsequently returned to them without prejudice to the rights of either party.
 

 “At no time during the period beginning March 2, 1933, and ending May 20, 1933, did the 'Canal Blank
 
 &
 
 Trust Company pay out more than 5 per cent, to any depositor of the balance to the credit of such depositor as of March 1, 1933, and did not pay out any gold or gold certificates whatever.
 

 “The bank did not lend any money, but did collect on notes and extend notes and did borrow cash on its assets from the Reconstruction Finance Corporation for the purpose of
 
 *1025
 
 setting up the fund to pay the 5 per cent, due depositors and creditors.
 

 “The amount borrowed from the Reconstruction Finance Corporation is as follows:
 

 “$1,000,000 on March 3, 1933.
 

 “$2,300,000 on March 20, 1933.
 

 “$1,100,000 on March 22, 1933.
 

 “The Canal Bank & Trust Company was placed in liquidation on May 20, 1933, and it is not now and has not been since May 20, 1933, in a position to pay all creditors and depositors in full in cash, and the amount that will ultimately be paid to creditors and depositors, or the time at which payment or payments will be made, is indefinite and not capable of ascertainment
 

 “The facts above stated are in accordance with the statement of facts agreed upon by counsel, and found at pages 24 to 27, inclusive, in the transcript in this case.
 

 “At the date of the maturity of the note, H. Wainer & Co. had a balance in the Canal Bank & Trust Company of $17,537.85, and H. Wainer a balance of $5,331.12, a total balance of $22,868.97, or $2,868.97 over and above the amount due the bank on the note, in 'which it is expressly stipulated that the deposits of intervener in the bank, at the maturity of the note, ‘shall be and stand applied forthwith to the payment of this note.’
 

 “The Canal Bank & Trust Company having refused on March 27, 1933, when the note fell due, to accept the check of H. Wainer & Co. for $17,500 and the check of H. Wainer for $2,500 in compensation or offset of the note, the intervener, H. Wainer, filed the present suit against the liquidators of the bank to compel them to deliver to him as paid and canceled the note for $20,000 and also a dividend of $842.70 on the balance of deposit remaining in the bank.
 

 “The trial judge held that the Canal Bank & Trust Company was solvent on March 27, 1933 ; that the note for $20,000 was compensated on that date, when it fell due, by virtue of the waiver provision therein that the deposit should be applied to the discharge and extinguishment of the debt evidenced by the note; and that the proclamations and orders of the President of the United States and the regulations of the Secretary of the Treasury did not affect plaintiff’s right to compensate and offset the note with his deposits in the bank.
 
 * * *
 

 “No
 
 real
 
 payment being necessary as the basis of the right of intervener to compensate the note with his deposits, the contention of the liquidators of the bank that intervener in this case cannot plead compensation, because he could not draw more than 5 per cent, of his deposits in bank, an amount insufficient to pay the note, is not sound in law.
 

 “Compensation, at all events, is but a
 
 flotitiom
 
 payment, the balancing of accounts, the extinction of one debt by another, by mere operation of law.
 

 “We are not impressed, therefore, with the contention of the liquidators in this case that the universal law of compensation, or set-off, prevailing in the various states of the Union was set aside, either by the prohibition in the President’s promulgations against ‘paying out’ bank deposits after the national banking holiday had been declared, or by the limitation in Regulation No. 27 of the Secretary
 
 *1027
 
 of the Treasury of payment of 5 per cent, to depositors and creditors.
 

 “The reasons for the promulgations of the President and the resolution of the Secretary of the Trelasury are made apparent by the following preamble in the promulgation made by the Chief Executive of the Nation, of date March 6, 1933:
 

 “ ‘Whereas there have been heavy and unwarranted withdrawals of gold and currency from our Banking institutions for the purpose of hoarding; and
 

 “ ‘Whereas continuous and increasingly extensive speculative activity abroad in foreign exchange has resulted in severe drains on the Nation’s stocks of Gold; and
 

 “ ‘Whereas it is in the best interests of all Bank depositors that a period of respite be provided with a view to preventing further hoarding of coin, bullion or currency or speculation in foreign exchange and permitting the application pf appropriate measures to protect the interests of our people.’
 

 “It is clear, therefore, that ‘the paying out of deposits’ prohibited by federal action is leveled solely at the paying out of actual money, and not at such fictitious payments as larise from settlement of accounts between banker and depositor by the universal law of compensation, or set-off, which takes place by mere operation of law, and not by the withdrawal of actual funds from the banks.
 

 “Neither the proclamations of the President, nor the regulation of the Secretary of the Treasury changed, or could change,' the indisputable fact that mutual indebtedness between the bank and intervener existed simultaneously on March 27, 1933, when the note of intervener fell due,- and that this indebtedness on that date was equally liquidated and demandable. Necessarily, the law of compensation or set-off applies to the case.
 

 “The Secretary of the Treasury, under the authority conferred upon him by the President’s proclamations declaring and continuing the national bank holiday, issued on March 18, 1933, Regulation No. 27, whieh.provides that ‘Any State Banking Institution which is a member of the Federal Reserve System and which is not licensed by the Secretary of the Trelasury to reopen for the performance of usual Banking functions may, with the approval of the appropriate State authority having immediate supervision of such Banking institution, permit withdrawals by depositors and make payments to creditors of such percentage of the amounts due to them (not exceeding 5%) as it may determine, provided that at or before the time of such withdrawal or payment it shall set aside and make available for such purpose a fund sufficient to pay all depositors and creditors the percentage so determined.’
 

 “Intervener contends that, to claim that this order defeated intervener’s right to compensate his note, by such part of his deposit' as was necessary for that purpose, would deprive him of his private property, his right of compensation under the law, and ‘his contract’ with the bank to have his deposits applied on the note, in violation of article 5 of the Amendments to the Federal Constitution.
 

 “This contention on the part of the intervener, in our opinion, is without merit for two reasons. In the first place, we are not of the opinion that the regulation of the Secretary of the Treasury has, or was intended
 
 *1029
 
 to have, such effect, for reasons already assigned.
 

 “In the second place, the provision in the note applying intervener’s deposits on the note is not a contract, hut is a mere waiver by the intervener of the obstacle of article 2210 of our Civil Code, in providing th'at compensation does not take place where one of the demands is for the restitution of a deposit.
 

 " “The exception provided by article 2210 of the Civil Code as to irregular deposits is in favor of the depositor and not of the bank.
 

 “In France, where the Code contains articles similar to ours, it is universally recognized that, where the obstacle preventing compensation is in favor of one of the parties, that party may waive the obstacle and plead compensation; this kind of compensation being designated by the French commentators as ‘facultative compensation.’ ”
 

 When we consider the context of the repurchasing agreement in this record and the fact that the maker of the Wainer note did not have a sufficient deposit to its credit- to pay that note at its maturity, but the additional sum necessary to supply that deficiency was tendered by the check of the indorser of the note drawn against his individual deposit in the bank, we think this is the stronger of the two cases, for the reason that here we have an inviolable contract of pledge and repurchase, and, moreover, no money is withdrawn from the bank, but, on the contrary, if the judgment appealed from is affirmed, the cash assets of the bank will be increased 813,678.13.
 

 For the foregoing reasons, and being of the opinion that the Wainer Case is decisive of this ease, the judgment appealed from is affirmed, at appellant’s cost