156 So. 803

FRIERSON & CO., Inc., v. CANAL BANK & TRUST CO. et al.

No. 32762.

July 2, 1934.

Rehearing Denied Oct. 2, 1934.

Dart & Dart and Dufour, St. Paul, Levy & Miceli, all of New Orleans, for appellant.

Miller, Bloch & Martin, of New Orleans, for appellee.

ODOM, Justice.

The Canal Bank & Trust Company, now in liquidation, but not in liquidation at the time this suit was filed, prosecutes this appeal from a judgment recognizing plaintiff as the owner and entitled to the possession of certain negotiable warehouse receipts and ordering defendant to surrender them and also perpetuating an injunction restraining defendant from disposing of them pending final determination of this suit.

The facts are that on January 23, 1933, Frierson & Co., Inc., being in need of funds, borrowed $10,100 from the Canal Bank & Trust Company, and executed a ninety-day draft or acceptance payable to itself and by it indorsed in blank, which draft was accepted by the defendant bank, the proceeds being credited to the drawer. On the same day, and as a contemporaneous collateral transaction, Frierson & Co., Inc., executed a pledge agreement which, in so far as the same need be literally quoted, reads as follows:

"Gentlemen: In consideration of your accepting our draft dated this day drawn on —————— payable ninety days from date for Ten Thousand One Hundred Dollars, we hereby hand you in pledge as security therefor the undermentioned warehouse receipts and/or bills of lading for two hundred seventy two B/C and guarantee to provide you with funds to take up this acceptance at maturity."

This pledge agreement further provided that, should the security "hereby pledged to you" decline in value, the pledgor would, within twenty-four hours from demand, furnish and pledge additional security, and that failure to do so would mature the pledge.

It provided further that, in case the pledgor failed to furnish additional collateral "or to deposit sufficient funds with you to take up this acceptance at maturity as provided for above, you are hereby authorized to sell such securities at public or private sale * * * the proceeds * * * shall be applied first to payment of costs of selling and second to

the payment of the above mentioned acceptance," etc.

On April 19 following plaintiff brought the present suit alleging that its indebtedness to the bank had been reduced, by subsequent payments, to $8,655, and that on or by April 13, 1933, prior to the maturity of the draft or acceptance, it had deposited with the defendant bank funds in excess of $8,655, and on said date had to its credit with defendant a sum in excess of said amount; and that on April 13 it had delivered to defendant two checks drawn on defendant bank aggregating $8,655, accompanied by a letter of same date requesting, among other things, that the warehouse receipts be surrendered.

Plaintiff alleged further that it renewed its request some two or three days later, but that the defendant bank refused to surrender its collateral and returned its checks. It prayed for judgment decreeing it to be the owner and entitled to immediate custody of said warehouse receipts each for one bale of cotton and for an order directing the defendant to forthwith surrender and deliver the same to petitioner. It further prayed that said warehouse receipts be sequestered and held until the final orders of the court, and that a temporary restraining order issue enjoining the bank from alienating or otherwise disposing of said receipts or from sending the same outside the jurisdiction of the court.

Defendant set up a twofold defense. It alleged that the draft, together with the collateral pledged to secure it, had been sold or negotiated to the Chase National Bank in due course, which bank was the holder and owner of both the draft and the warehouse receipts; that, while said draft and receipts were in

its hands at the time suit was filed, it held them on a trust receipt, the legal title being in the Chase National Bank; that "Canal Bank & Trust Co. holds the securities (meaning the warehouse receipts) merely in a fiduciary capacity as trustee for account of the Chase Bank and that defendant has no right, power or authority to surrender possession of the collateral without the consent of Chase; that Chase has never received payment of the draft, that plaintiff as drawer is liable to Chase, the present holder and that the Chase Bank is not before the court; and that the Chase National Bank not being a party to this cause its rights on the draft and to the collateral are impossible of determination by the court." (Quoting from defendant's brief, p. 3.)

It contends also that "plaintiff has at no time complied with its obligations to furnish the Canal Bank with sufficient funds to take up the acceptance at maturity; that at the time plaintiff tendered to defendant two checks on April 13, 1933, the bank had been closed by the President's proclamation and there were not sufficient available funds to the credit of plaintiff in the bank to enable defendant to honor the checks; that the amount of one of the checks, namely, $5,895, was frozen or immobilized as a result of the Act of the United States Government, and that even if the court should hold that the negotiation of the draft and collateral to Chase was without legal effect and if the court should decide that question without Chase being before the court, nevertheless defendant is still entitled to retain the collateral as security for the performance of the obligations of plaintiff to defendant." (Quoted from defendant's brief, pp. 3, 4.)

Whether the checks tendered by plaintiff to defendant should have been accepted as payment of the draft is not an issue involved in this litigation.

Plaintiff does not ask that the dràft be canceled and delivered to it. But it alleges that it has complied with its obligation evidenced by the pledge agreement of guaranteeing "to provide you (the bank) with funds to take up this acceptance at maturity" or "to deposit sufficient funds with you to take up this acceptance at maturity as provided above." Alleging that on April 13 it had on deposit with the defendant bank a sum in excess of the balance due on the draft, and that on that day it tendered to the bank its checks for the amount due, plaintiff asks that the collateral, not the draft, be surrendered to it. Counsel for defendant admits that on April 13, which was prior to the maturity of the draft, plaintiff had on deposit in the Canal Bank & Trust Company the sum of $8,930.67, which was more than plaintiff owed on the draft. They admit also that on that date plaintiff tendered two checks, both drawn on said bank, one for $5,895.68 and the other for $2,759.32, totaling $8,655, the exact balance due on the draft.

The delivery of these checks was a tender or delivery to the bank of the deposits which plaintiff then had to its credit in the bank. So that plaintiff complied with its obligation to provide the bank with sufficient funds to take up the draft at its maturity. The purpose of pledging the warehouse receipts was to secure the payment of the draft. "The pledge is a contract by which one debtor gives something to his creditor as a security for his debt." C. C. art. 3133.

The contract of pledge entered into between plaintiff and defendant shows that plaintiff handed to defendant the warehouse receipts "in pledge as security" and as a "guarantee to provide you (the bank) with funds to take up this acceptance at maturity." Before maturity of the acceptance, plaintiff provided the bank with sufficient funds, and, under the contract of pledge, plaintiff was entitled to have its securities returned.

But defendant says that one of the checks, that for $5,895.68, was drawn on a "frozen account"; that plaintiff had on deposit subject to check only $3,034.99; that this was the only "free balance" plaintiff had in the bank at the time, a sum insufficient to pay the balance due on the draft; that the balance of plaintiff's deposit was not subject to check and could not be withdrawn due to presidential proclamations impounding 95 per cent. of all bank deposits except for certain designated purposes.

The fact that this so-called "frozen balance" could not be withdrawn from the bank by plaintiff affords no ground for holding that plaintiff failed to live up to its pledge agreement.

In the Wainer Case, 178 La. 961, 152 So. 578, there was involved the question of compensation or set-off, and the same question was involved in the more recent case of In re Liquidation of Canal Bank & Trust Co. (Intervention of Bank of Picayune) 179 La. 1018, 155 So. 760. But no such issues are involved in this case. Here plaintiff merely contends that it has provided the bank with sufficient funds to take up the draft at its maturity, and, having done so, it has redeemed

the pledge and the securities should be returned.

■ Defendant urges, as another reason why it cannot be called upon to surrender the warehouse receipts, that it no longer owns them, it having pledged or negotiated them to the Chase National Bank, which is not before the court in this case, and that the court cannot pass upon that bank's title to them without its being made a party.

The answer to this contention is that the Chase National Bank is not now claiming the warehouse receipts. It intervened in the present case, at the earnest solicitation of counsel for defendant (so they say in their brief), alleging it was the holder and owner in due course of the draft drawn by plaintiff, and that it was also "the holder and owner of the pledge of said two hundred forty one (241) warehouse receipts, or any substitutes therefor, securing the same," and that its rights to and under said pledge were acknowledged and confirmed by the indorsement on the said draft reading as follows:

"All property deposited with us securing this bill is held by us in trust for the holder of this bill as security for the payment thereof, and all our rights in said security are assigned to the holder thereof."

It prayed for judgment recognizing "its rights as pledgee" of said warehouse receipts, and it further prayed that "its lien and privilege of pledge on said two hundred forty one (241) warehouse receipts, or any substitutions therefor, or for any of them, be recognized and enforced, and that in accordance with law, the said property be sold * * * at public auction without appraisement to the highest bidder; that out of the proceeds of the sale your petitioner be paid, by privilege preference and priority over all other persons, the amount of said draft," etc.

It prayed also for judgment against Frierson & Co., Inc., for $8,655, the balance due on the draft.

Frierson & Co., Inc., excepted to this petition of intervention on the ground that it set out no cause or right of action and on the further ground that the petition "improperly joins a demand for relief relative to the subject matter of this suit with the demand for personal judgment against plaintiff as alleged endorser of the draft, which alleged liability is not involved in the main action and is not properly the subject of an intervention in this action involving the right of ownership and possession of certain warehouse receipts." Without waiting for the court to pass on the exception, the intervention was ordered by the court "discontinued at the cost of intervenor and third opponent without prejudice to any of its rights whatsoever" upon motion of counsel for intervener.

Counsel for defendant say in their brief that the voluntary discontinuance of its intervention by the Chase National Bank should not be considered an abandonment of its claim to the warehouse receipts because it was plain that intervener could not obtain personal judgment against Frierson & Co., Inc., on the draft, as the draft was not involved in the suit, and that the intervention was dismissed for that reason. But they overlooked the fact that not only did the Chase National Bank

pray for judgment against Frierson & Co., Inc., on the draft, but also asked for judgment recognizing its rights as pledgee of the receipts. So that, even though its petition of intervention did not set out a cause of action against Frierson & Co., Inc., for a personal judgment, it did set out a cause of action to enforce its right to the receipts. Intervener abandoned not only its suit against Frierson & Co., Inc., but also its claim to the receipts.

As further evidence that the Chase National Bank is not now claiming the warehouse receipts, after it voluntarily dismissed its intervention in the present suit, it filed suit in the United States District Court for the Eastern District of Louisiana against Frierson & Co., Inc., for the balance due on the draft, alleging that it was the holder and owner of the same, and "that by reason of the foregoing, said Frierson & Co., Inc., as drawer and endorser of said draft, is justly and truly indebted unto your petitioner as holder and owner in due course of said draft in the full sum of Eight Thousand Six Hundred Fifty Five ($8,655.00) Dollars."

But it said not a word about the warehouse receipts which it alleged in its intervention it owned, and which counsel for defendant now say it owns. Evidently the Chase Bank considers its title to the certificates precarious or it no longer desires to assert any right to them. At any rate, it is making no claim to them, although it has all along had full knowledge of the claim asserted by plaintiff in this suit.

For the reasons assigned, the judgment appealed from is affirmed.