**162 So. 31**

**In re LIQUIDATION OF CANAL BANK & TRUST CO.**

**Intervention of GAY–SULLIVAN & CO., Inc.**

**No. 33317.**

April 29, 1935.

Rehearing Denied May 27, 1935.

Alfred Grima and Miller, Bloch & Martin, all of New Orleans, for appellant.

Dufour, St. Paul, Levy & Miceli, Rene J. Waguespack, and Gordon W. Goodbee, Jr., all of New Orleans, for J. S. Brock, State Bank Commissioner, H. G. Thompson, his special agent in charge of Canal Bank & Trust Co., and Reconstruction Finance Corporation, appellee.

ODOM, Justice.

The state banking commissioner took charge of the Canal Bank & Trust Com-

pany for the purpose of liquidation on May 20, 1933. Prior to that date, Gay-Sullivan & Co., Inc., had executed its note in favor of the bank for $25,000, secured by collateral amounting to $100,000. The note was made payable to the bank and fell due on May 22, two days after the bank went into liquidation. At the time the note fell due, Gay-Sullivan & Co., Inc., had on deposit in the bank a sum in excess of the amount due on its note. The bank had, prior to the maturity of the note and prior to the date on which it went into liquidation, pledged the note and the collateral to the Reconstruction Finance Corporation as security, in part, for a loan of $1,500,000. The bank having been closed for liquidation prior to the date on which the note matured, the liquidator refused to permit Gay-Sullivan & Co., Inc., to pay it with its deposit.

The present suit was brought by Gay-Sullivan & Co., Inc., by way of intervention in the liquidation proceedings, on April 24, 1934, against the liquidator of the bank and the Reconstruction Finance Corporation, the purpose of the suit being to have it decreed that intervener's note had been paid by compensation or set-off and decreed further that the note and the collateral be returned to intervener.

In answer, the liquidator and the Reconstruction Finance Corporation admitted that at the time intervener's note fell due, it had on deposit in the bank a sum ex-

ceeding the amount due on the note, and set up the following defenses:

(1) "That the note involved in the case was a negotiable promissory note, pledged to the Reconstruction Finance Corporation before maturity and for value."

(2) "That compensation by a maker of a negotiable instrument can not be maintained against the holder in due course and for value when said holder for value is not indebted to the maker."

(3) "That compensation at any event could not take place since the note of Gay-Sullivan & Company, Inc., matured subsequent to the liquidation proceedings."

There was judgment in the trial court rejecting intervener's demands, from which judgment it appealed.

The case was submitted in the trial court on an agreed statement which discloses the above facts.

Counsel for Gay-Sullivan & Co., Inc., argue that because it had on deposit in the bank at the time the note matured a sum in excess of the amount due thereon, its debt to the bank was extinguished by compensation or set-off, and in support of their contention cite articles 2207 and 2208 of the Civil Code.

■ Article 2207 of the Civil Code provides that "when two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts," and article 2208 says that compensation takes place "by the

mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums."

These articles of the Code, however, have no application where the rights of third persons are involved, because article 2215 of the Civil Code provides that "compensation can not take place to the prejudice of the rights acquired by a third person."

But counsel for intervener contend that the note here involved is not a negotiable instrument, that the Reconstruction Finance Corporation was not a holder of it in due course and is therefore not protected by article 2215 of the Code. It is, of course, conceded by counsel for the bank and the Reconstruction Finance Corporation that the maker of a nonnegotiable note is entitled to all such defenses against a third holder as he would have had against the original holder if the note had not been transferred, but they argue that this note is a negotiable instrument. These respective contentions make it necessary for us to decide whether the note is or is not a negotiable instrument.

▮ The note contains the following clauses which counsel for intervener say destroy its negotiability within the meaning of the Negotiable Instruments Law, which is Act No. 64 of 1904:

Clause 5: "Unless this note be paid at its maturity, or when otherwise due, as herein provided, any money, securities, or property on deposit with, in possession or under the control of, or held by said bank for any purpose whatsoever, or in transit to or from said bank or mail or carrier, to the credit of or for account of the undersigned, or any of them, shall at once be and stand applied to the payment of this note, or any other debt, liability or obligation, direct or contingent, due or to become due, by the undersigned, or any of them, to the said bank. In the event that this note or any other debt, liability or obligation, due by the undersigned, or any of them, to said bank, be placed in the hands of an attorney at law for collection, attorneys' fees hereby fixed at ten (10%) per cent. and secured by the pledge hereof shall be due thereon."

Clause 6: "Said Bank (Canal Bank & Trust Co.) may ˮtransfer this note and make delivery of the said collateral security or any part thereof to the transferee or transferees, who shall thereupon have and become vested with all of the rights and powers held and possessed by said bank in respect thereof, and the said bank shall thereafter be forever relieved and fully discharged of any liability or responsibility in the premises."

Section 1 of the Negotiable Instruments Law provides that an instrument to be negotiable must conform to these requirements:

"1.  It must be in writing and signed by the maker or drawer;

"2. Must contain an unconditional promise or order to pay a sum certain in money;

"3. Must be payable on demand, or at a fixed or determinable future time;

"4. Must be payable to order or to bearer; and,

"5. Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

It is conceded that the note here involved conforms in every detail with these conditions; but it is argued that while the note is otherwise negotiable, it is rendered nonnegotiable because it contains an order or promise to do something in addition to the payment of money, which order or promise destroys the negotiability of the note, for section 5 of the act says that "an instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable."

We have quoted in full clauses 5 and 6 of the note, which counsel say destroy its negotiability. Clause 5 merely provides that if the note is not paid at maturity, any money, security, or property on deposit with, in possession or control of, or held by the bank for any purpose whatever "shall at once be and stand applied to the payment of this note or any other debt, liability or obligation, direct or contingent, due or to become due by the undersigned or any of them, to the bank."

It is perfectly clear that this clause does not contain an order or promise to do an act in addition to the payment of money, and since it does not, the note was not rendered nonnegotiable by inclusion of that clause in its face.

We find it unnecessary to discuss the question raised by counsel for the reason that it is not new in our jurisprudence and has been settled against their contentions. The identical question was decided in Bonart v. Rabito, 141 La. 970, 76 So. 166, and the holding in that case was approved without comment two years later in Mechanics & Metals National Bank v. Warner, 145 La. 1022, 83 So. 228, 229.

The note involved in the Bonart Case contained a stipulation almost, if not quite, identical with the one in the note here under consideration. A discussion of this particular feature of the note in the Bonart Case, 141 La. 970, begins on page 982, 76 So. 166, 170, and it was held, to quote paragraph 3 of the syllabus, which is a concise and correct statement of the holding, that:

"A promissory note, otherwise negotiable, is not rendered nonnegotiable by * * * (3) a stipulation that, if the note be not paid at maturity, any money, stocks, bonds, or other property on deposit or otherwise to the credit of the maker or any indorsers, on the books of the bank to which the note is made payable shall at once stand applied to the payment of the note."

In the Warner Case the note contained a similar clause and it was there claimed that such clauses destroyed the negotiability of the note. The court dismissed the contention, saying, "As to the second of said clauses [referring to the one here under discussion] the contrary was expressly held in Bonart v. Rabito, 141 La. 970, 76 So. 166."

Clause 6 of the note provides that the bank might transfer the note and make delivery of the attached collateral security or any part thereof to the transferee or transferees, "who shall thereupon have and become vested with all the rights and powers held and possessed by said bank. And the said bank shall thereafter be forever relieved and fully discharged of any liability or responsibility in the premises."

This clause has reference only to the transfer of the note and the delivery to the transferee of the attached collateral. The bank had power and authority under the law to transfer the note so that the part of the clause relating to a transfer was pure surplusage. As to the sale and transfer of the collateral, that part of the clause relating thereto does not affect the negotiability of the note, because section 5 of the Negotiable Instruments Law expressly says:

"But the negotiable character of an instrument otherwise negotiable is not affected by a provision which: 1. Authorizes the sale of collateral securities in case the instrument be not paid at maturity."

The note executed by the intervener in this case evidences an unconditional promise to pay a sum certain in money on a fixed date to a specified individual and contains no order or promise to do an act in addition to the payment of money. We hold therefore that it is a negotiable instrument.

■ The note was made payable to the bank and was its property. It was negotiated for value before maturity, by indorsement completed by delivery. It was complete and legal on its face, had never been dishonored, contained no infirmity, there was no defect in title, and the Reconstruction Finance Corporation acquired it in good faith. It was therefore a holder in due course.

The legal consequence is that the intervener cannot now invoke those pleas and equities which might have availed it had the bank remained the holder and owner of the note and the collateral. It is cut off by the Negotiable Instruments Law, section 57 of which reads as follows:

"A holder in due course holds the instrument free from * * * defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Therefore, if it be conceded as counsel contend, that where a bank holds a note of an individual who has on deposit therein funds sufficient to pay the note at its maturity, compensation or set-off takes

place even though the bank be in liquidation when the note falls due, the intervener in this case is not relieved, because rights of a third party are involved. The bank transferred 'the note and collateral to the Reconstruction Finance Corporation, which held them at the time the bank was closed for liquidation, and at the time the note fell due. Compensation cannot take place to the prejudice of the rights acquired by third persons. When the Reconstruction Finance Corporation acquired the note, it acquired the right 'to enforce payment of it in full by the intervener, who was the maker and principal obligor, regardless of any equities which may have existed between the bank and the intervener.

In support of their contention that compensation took place in this case, counsel for intervener cite the following cases: In re Canal Bank & Trust Co. (Intervention of Bank of Picayune), 179 La. 1018, 155 So. 760; Frierson & Co. v. Canal Bank & Trust Co., 180 La. 502, 156 So. 803, 808, 95 A. L. R. 929; and In re Canal Bank & Trust Co. (Intervention of Wainer), 178 La. 961, 152 So. 578.

These cases have no application here. The question of compensation or set-off was not involved in the Frierson Case. In the other two cases the rights of third persons were not involved.

Our holding that this note is a negotiable instrument and that the Reconstruction Finance Corporation was the holder of it

in due course disposes of the only pertinent issue involved in the case. The judgment appealed from is affirmed.