PONDER, Justice.
 

 This is an intervention wherein intervener claims an offset of its deposit against its note.
 

 This case was submitted to the lower court on the following agreed statement of facts:
 

 It is agreed that the Citizens Building & Loan Association borrowed $5,000 from1 the Citizens Bank & Trust Company on the 3d day of January, 1933, for which it executed its promissory pote payable to the order of the Citizens Bank & Trust Company at its banking house in the city of Baton-Rouge, La., on demand, and secured by the. collateral mentioned in the petition of intervener.
 

 That said note was executed and signed: on the form prepared and furnished by the Citizens Bank & Trust Company, and that-the form of note attached to and made part, of intervener’s petition is identical with the form on which said note was executed..
 

 That on the 28th .day of January, 1933,. under an application dated January 21, 1933, the Citizens Bank & Trust Company borrowed money from the Reconstruction. Finance Corporation and pledged and de- • livered in pledge the note and collateral of intervener to the Reconstruction Finance Corporation as part of the security for the:
 
 *1081
 
 «aid loan. That the Reconstruction Finance Corporation held the said note in pledge from that time until June
 
 2,
 
 1934, when the •obligation for which it was pledged was paid by the new loan hereinafter referred to, and, in the meantime, the said note was .again pledged to the Reconstruction Finance Corporation for the said new loan, and the Reconstruction Finance Corporation still holds said note as collateral for this new loan.
 

 That from March 1, 1933, until March 20, 1933, the Citizens Bank & Trust Company remained closed and did no business except that on Friday, March-3d, and Saturday, March 4th, pursuant to regulations of the State Bank Commissioner and the Acting Governor of the state, the hank permitted withdrawals by its depositors of not exceeding 5 per cent, of the balance of the credit •of the depositors as of March 1, 1933. During this -period the hank remained closed, except as above stated, acting under the orders of the state authorities and the proclamations of the President of the United States of date March 6, and-March 9, 1933, declaring and extending a national hanking holiday. The Citizens Bank & Trust Company not being a member of the Federal Reserve System opened on March 20, 1933, under regulations of the State Bank Commissioner, approved by the Governor of the state of Louisiana, and, acting in co-operation with other hanks in its locality, permitted the withdrawals by its depositors of not exceeding 5 per cent, of the credit balance of such depositors as of March 1, 1933. From March 20, 1933, until May 3, 1933, except for one day, March 22, 1933, when the said bank opened for business without restrictions, the said bank operated on a 95 per cent, restricted basis and permitted withdrawals by its depositors of not exceeding 5 per cent, of their credit balances as of March 1, 1933. On May 3, 1933, the bank finally closed and surrendered its assets to the State Banking Department for liquidation. The Citizens Bank & Trust Company never belonged to any clearing house association or any other similar association of hanks or bankers.
 

 That on the 24th day of March, 1933, intervener having learned that the bank had pledged its note and collateral to the Reconstruction Finance Corporation, and being desirous of paying its said note, requested the Citizens Bank & Trust Company, in writing, to secure the return of said note from the Reconstruction Finance Corporation in order that intervener might pay same to said hank. That while the officials of the Citizens Bank & Trust Company promised to obtain the note from the Reconstruction Finance Corporation, they never did so.
 

 That prior to the time the bank went on a restricted basis it had been the custom to obtain the return of notes pledged by it to the Reconstruction Finance Corporation on trust receipt, but that, during the time the bank operated on a restricted basis, the Reconstruction Finance Corporation refused to send notes to the bank on trust receipt.
 

 That on March 1, 1933, the Citizens Building' & Loan Association had on deposit in bank a checking account in the sum of $3,214.28. The Citizens Building & Loan Association during the restricted
 
 *1083
 
 period withdrew the 5 per cent, made available to it as a depositor, and on March 22, 1933, the one day on which the bank operated without restrictions, checks were honored against this account to make a total withdrawal, together with the 5 per cent, of $263.23, leaving a credit balance of $2,951.05.
 

 That on April 27, 1933, the Citizens Building, & Loan. Association tendered the Citizens Bank & Trust Company a check for $2,951 drawn by intervener on said bank and payable to the order of said bank together with the sum of $2,103.45 in cash, in full payment of intervener’s note, and that the said bank refused to accept said check and cash and deliver intervener’s note. The total amount of the check and cash tendered to said bank being $5,054. 45.
 

 That the statement attached to intervener’s petition showing the amount of said note as $5,000 and the interest due to 4/27/33 as $54.45 was furnished to intervener by the note clerk of the said bank on the 27th day of April, 1933, and that the tender made by intervener to said bank was based on said statement. The parties agree that the statement is not correct and that the correct amount of interest due on said date was $72.66.
 

 That during the period above mentioned, while the bank was on a restricted basis, the bank accepted trust or liquid deposits and collected obligations due to said bank.
 

 That intervener paid the said bank the sum of $2,000 to apply on said note on August 8, 1933, which said payment was made by intervener and accepted by the special agent of said bank without prejudice to the rights of intervener to file suit for an offset of its deposit. In consideration of this payment, the special agent released to intervener the mortgage note signed by W. H. Varnado for $3700.
 

 That since the filing of this suit intervener submitted as collateral $2,000 of Home Owners Loan Corporation bonds for the mortgage note signed by Mrs. Dora E. Brainis, which said substitution was made without prejudice to the rights of intervener in this suit. That, therefore, the collateral now held by the said bank for the security of intervener’s note is as follows:
 

 Mortgage note of Fred G. Benton for $3,200.
 

 Mortgage note of W. W. Beard for $2,~ 300.
 

 Home Owners Loan Corporation bonds for $2,000.
 

 That none of the proclamations or regulations mentioned in paragraph 9 of the answer of the Citizens Bank & Trust Company, in liquidation, prohibited said bank from collecting obligations due to it, nor did any of such regulations prohibit intervener from being entitled to the compensation and offset prayed for if the court holds such compensation and offset to be otherwise legal.
 

 That on the 2d day of June, 1934, the Citizens Bank & Trust Company, in liquidation, through its liquidator acting under an order of court of date January 9, 1934, borrowed $209,276.82 from the Reconstruction Finance Corporation and pledged and delivered all the assets of said bank, including intervener’s note, except assets
 
 *1085
 
 pledged elsewhere, to said Reconstruction Finance Corporation to secure the payment of said loan; that out of the proceeds of said loan the Citizens Bank & Trust Company, in liquidation, paid the Reconstruction Finance Corporation, including the sum borrowed from the Reconstruction Finance Corporation on January 28, 1933, and secured by the pledge of intervener’s note and collateral.
 

 That the Reconstruction Finance Corporation had notice prior to the confection of the new loan above referred to that the Citizens Building & Loan Association claimed an offset of its deposit in the Citizens Bank & Trust Company from the proceeds of said new loan, and is holding said sum in suspense due to the fact that the Citizens Building & Loan Association claimed an offset for the full amount of its note (deposit) because of funds on deposit in the Citizens Bank & Trust Company.
 

 The lower court rendered judgment condemning the defendant in intervention to accept the check for the frozen deposit and the balance in cash and ordered the defendant bank to return to the intervener its note and collateral.
 

 The defendant in intervention appealed from the judgment to this court.
 

 The defendant bank contends that the judgment of the lower court should be reversed for the reason that the issues presented herein were decided in the case of In re Liquidation of Canal Bank & Trust Company (Intervention of Gay-Sullivan & Co.), 182 La. 421, 162 So. 31, 102 A.L.R. 1091, and the case of In re Canal Bank & Trust Co. (Intervention of Orleans Homestead Association), 186 La. 366, 172 So. 421, 424.
 

 The defendant bank contended that the above cases decided all issues presented herein unless it would be the question of whether or not the note pledged herein to the RFC, being a note payable on demand, was pledged before maturity. The lower court handed down no reasons for judgment. Therefore, we have no way of determining on what findings the court rendered the judgment herein. After examining the record in the instant case and the above-mentioned decisions of this court, we are of the opinion that the sole question involved herein is whether or not the note was pledged to the RFC before maturity. The note pledged herein is complete and legal on'its face, and there is no contention to the contrary. It is admitted that the note is negotiable. There is no defect in the title and the RFC acquired the note in good faith in the usual course of business. This being the case, the sole question presented is whether it was pledged to the RFC before or after maturity.
 

 Section 53, Act No. 64 of 1904 reads: •
 

 “Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course.”
 

 < Section 193 of the same act reads as follows :
 

 “In determining what is a ‘reasonable time’ or an ‘unreasonable time,’ regard is to be had to the nature of the instrument, the usage of trade or business [if any] with respect to such instruments, and the facts of the particular case.”
 

 
 *1087
 
 In the instant case the note was issued on January 3d to the bank and the bank pledged it to the RFC on January 28. Therefore, the note was pledged 25 days from the date it was issued. It is for us to determine whether a note made payable on demand negotiated 25 days after its issue is negotiated within a reasonable or unreasonable length of time.
 

 'In determining this under the act regard must be had to the nature of the instrument itself, the usage of trade or business with respect to such instrument, 1 and the facts of this particular case. Since the act provides that, when such instrument is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course, the converse would be true were the instrument negotiated within a reasonable length of time. This court held, in the case of American National Bank v. Patterson 145 La. 995, 83 So. 218, 7 A.L.R. 1563, that a note received 7 months after its date of issue was received an unreasonable length of' time.
 

 Section 59, Act No. 64 of 1904 states, “every holder is deemed prima facie to be a holder in due course.”
 

 Corpus Juris, vol. 8, p. 408, § 603: “In some cases it has been held that paper payable on demand is not overdue for the purpose of transfer, so as to make the transferee a purchaser after maturity, until after a demand has been made, and some have held that it is overdue immediately after1 it is issued. Most of the courts, however, hold that it is not overdue for the purpose of transfer until after the lapse of a reasonable time and that it is then overdue.”
 

 In the case of Morgan v. United States, 113 U.S. page 476, 5 S.Ct. 588, 598, 28 L. Ed. 1044, it is stated:
 

 “But the rule as to ordinary negotiable paper, payable on demand, is that it is not due, without" demand, until after the lapse of a reasonable time within which to make demand; and what the length of that reasonable time is, may vary according to the circumstances of particular cases, and must be governed very largely by the intentions of the parties, as manifested in the character of the paper itself, and the purposes for which it is known to have been created and put in circulation.”
 

 It is alleged in intervener’s petition in article 1 that the note was to bear 6 per cent per annum interest from date until paid, which is admitted in defendant bank’s answer. It is also alleged in article 4 of intervener’s petition that the interest on the note was paid up to February 1, 1933, which is also admitted in defendant bank’s answer. The nature of the business, the short length of time from the issuance of the note to the pledging of it to the RFC, and the fact that the interest was paid up to February 1, 1933, 4 days beyond the date of pledge herein,
 
 conclusively
 
 shows
 
 from the
 
 facts in this particular case that the instrument was negotiated within a reasonable length of time. The fact that the intervener paid the interest on the note up to February 1, 1933, and the defendant bank accepted the interest shows that it was not the intention of the parties themselves that any .steps were to be taken to secure the
 
 *1089
 
 payment of the note prior to February 1, 1933.
 

 The intervener’s counsel in summarizing his contentions states in his brief:
 

 “I submit that the bank was solvent on March 24, 1933, and was amply able to redeem the association’s note and collateral from its pledge to the Reconstruction Finance Corporation; that it was the duty and the obligation of the bank under its agreement with the association to so redeem said note and accept payment of same from the association; that the bank was thoroughly solvent- on the 27th day of April, 1933; that on said date the bank was indebted unto the association in the amount of the association’s deposit in said bank and that the association was indebted unto the bank in the amount of its note; that on said date both debts were equally due and demandable and that compensation took place between the two debts up to the amount of the association’s deposit; that the association’s' note being payable on demand put the Reconstruction Finance Corporation on guard when it accepted same in pledge, and that, - therefore, it accepted same subject to all equities between the parties; that even though Your Honors hold that the pledge under which the Reconstruction Finance Corporation was holding the association’s note on April 27, 1933, prevented the bank from accepting payment of said note and delivering same with the collateral thereto attached to intervener, compensation took place between the bank and the association, on said date as the bank was the owner of the note and the association’s creditor; that the new loan made to the bank by the Reconstruction Finance Corporation on June 2, 1934, was made after the Reconstruction Finance Corporation had notice that the association had tendered payment to the bank; that out of the proceeds of said new loan the bank paid the Reconstruction Finance Corporation in full all amounts due by it under prior pledges ; that the note of the association was returned to the bank and should have been returned by the bank to the association; that the Reconstruction Finance corporation is not before this court and claims no interest whatever in the association’s note and collateral.”
 

 The records show that the note was never released by the RFC to the bank and that it has been continuously in the possession of the RFC from January 28 until this date as shown by the agreed statement of facts. The RFC has never released the pledged note at any time. The debts previously owed by the bank to the RFC were in fact merged into a larger one. When the bank in liquidation through order of court obtained the new loan on January 4, 1934, all the assets of the bank were pledged to the RFC including intervener’s note, and from the proceeds derived from this new loan, the previous loan secured by intervener’s note was paid. Thus a small loan was merely merged into a larger one and, therefore, the question presented here is the same question that was decided in Re Canal Bank & Trust Company (Intervention of Orleans Homestead Association), supra, wherein this court stated:
 

 “Counsel seems to have overlooked the fact that the transaction of May 20, 1933, did not involve a new pledge of the col-
 

 
 *1091
 
 lateral held by the RFC as security for the old loans. The debts previously owed by the bank to the RFC were merged into a new and larger one, the agreement being that as security for the new loan all the collateral previously pledged to secure the old ones should remain pledged. It then had physical possession of this pledged note, which never went back into the hands of the bank. By these transactions the RFC lost none of its rights as pledgee of the note. See Reconstruction Finance Corporation v. Thomson et al., 186 La. 1, 171 So. 553, decided Monday, November 30, 1936.”
 

 It was -also decided in the above-mentioned case and in the case In re Liquidation of Canal Bank & Trust Company (Intervention of Gay-Sullivan & Co.) supra, that compensation does not take place where the rights of third parties are involved, citing article 2215 of the Civil Code, and that the legal effect of the delivery of a note in pledge before maturity by the original holder was to cut off all equities which may have existed between the maker and the bank. Section 57, Act No. 64 of 1904.
 

 All the. contentions of the intervener as to agreements and obligations between the intervener and the bank are not pertinent since we have determined that the RFC is a holder in due course. These contentions are equities between the intervener and the bank and can have no effect where third parties are involved. Since the evidence shows that the RFC has had continuous possession of the note and has never relinquished its right of pledge since January 28, 1933, the equities could have no effect as against the RFC, the holder of the note in due course. The note was made payable to the bank and was its property. It was pledged before maturity and the RFC was a holder in due course.
 

 The intervener contends that the ■ RFC is not before this court and claims no interest in the note. It is true that the RFC is not a party to this suit. Under the agreed statement of facts, there was no necessity for the RFC to be made a party to the suit. All that the RFC could set up by way of answer or intervention is alreaxly embodied in the agreed statement of facts.
 

 Counsel for the intervener contended in his argument before this court that the assets of the bank, pledged to the RFC to secure the loan made by the RFC to the defendant bank, exceeded in value the amount of the loan and that, this being the case, the RFC would only be entitled to claim a proportionate part in intervener’s note, so pledged. In other words, if the collateral called for twice as much as the loan, the RFC would, in that event, be only entitled to an equity of 50 per cent, in intervener’s note. This issue was not raised in the pleadings or evidence. As a matter of fact, there is nothing in the pleadings or the agreed statement of facts to show the value of the assets pledged by the defendant bank to the RFC.- Therefore the question is not before us.
 

 For the reasons assigned the judgment of the lower court is reversed, and the demand of intervener is rejected at its cost.