179 So. 15

**BANK OF ST. JOHN v. HIBERNIA BANK & TRUST CO. et al.**

No. 34615.

Jan. 10, 1938.

Rehearing Denied Feb. 7, 1938.

2

James Wilkinson and Hugh M. Wilkinson, both of New Orleans, for appellant.

Dufour, St. Paul, Levy & Miceli and Anna Judge Veters, all of New Orleans, for appellees.

FOURNET, Justice.

This suit was instituted by the Bank of St. John against the Hibernia Bank & Trust Company, in liquidation, and the Reconstruction Finance Corporation for the cancellation and return of its two certain promissory notes for the sum of $10,000 each, together with the collateral attached thereto in pledge to secure the payment thereof, on the ground that the notes were fully compensated and offset by operation of law,

under the provisions of article 2208 of the Revised Civil Code.

The defendants answered the suit denying the allegations supporting plaintiff's contention and averred that the notes signed by plaintiff had been pledged by the Hibernia Bank & Trust Company, prior to the time it was placed in liquidation, to the Reconstruction Finance Corporation, in due course, for a valuable consideration and before maturity. The Reconstruction Finance Corporation reconvened and prayed for judgment for the aggregate amount of the notes in principal, interest, and attorney's fees, with recognition of its right of pledge on the collateral attached to the notes.

The lower court rendered judgment in favor of the defendants and against the plaintiff, granting the reconventional demand of the Reconstruction Finance Corporation and rejecting plaintiff's demand. The plaintiff has appealed.

The plaintiff, a country bank, had for its correspondent in New Orleans, for a number of years, the Hibernia Bank & Trust Company from which it borrowed money from time to time in accordance with its needs to carry on its banking business. While it does not appear that there was an agreement as to the manner of conducting these transactions, the record shows that the customary manner of handling them by the parties was the way in which it was done in the instant case. On August 31, 1932, plaintiff executed its note for the sum of $10,000, payable to the order of its correspondent bank, payable on demand after date, on the usual loan note, and gave as

security for the payment thereof, in pledge, state and municipal bonds, aggregating in principal the sum of $45,000. Again, on the 29th of September, 1932, a similar loan was made and another note was executed by the plaintiff for the sum of $10,000, with the same bonds given as collateral. In accordance with the custom established by the parties, the proceeds of these two loans were immediately credited to the plaintiff's account, and the interest on the notes was paid monthly by charging plaintiff's account for the amount thereof and monthly reconcilements of the accounts were mailed to plaintiff.

On October 6, 1932, the Hibernia Bank & Trust Company, in accordance with the provisions of its loan contract with the Reconstruction Finance Corporation, made application to the corporation for permission to substitute new collateral, including plaintiff's note for $10,000, dated September 29, 1932, for certain items of collateral originally pledged to secure its loans aggregating $5,000,000. This application was approved and the plaintiff's note, together with other substituted collateral, was delivered in pledge to the Reconstruction Finance Corporation on October 24, 1932. On December 3, 1932, the Hibernia Bank & Trust Company made a similar request, which was granted, and on the same day, certain collateral, including the plaintiff's note of $10,000, dated August 31, 1932, was delivered to the Reconstruction Finance Corporation. The Hibernia Bank & Trust Company renewed its original loan prior to the maturity date, October 30, 1932, and on February 6, 1933, applied to the Re-construction Finance Corporation for a loan of $20,000,000, which loan was consummated, and to secure the payment thereof all collateral previously pledged by the Hibernia Bank, including plaintiff's notes involved in this suit, was given in pledge.

Counsel for appellant, in oral argument, conceded that if the Reconstruction Finance Corporation is the holder of the notes in due course and before maturity, we must affirm the judgment of the lower court, but it is his contention that the Hibernia Bank & Trust Company went into liquidation on May 20, 1933, at which time there was on deposit to the credit of plaintiff the sum of $41,917.53, and that plaintiff's two notes, being payable *on demand after date,* became due the day after the execution thereof, and consequently the Reconstruction Finance Corporation acquired the notes subject to the equities between plaintiff and the Hibernia Bank.

On the subject, "The Negotiable Instruments Law," in Corpus Juris, volume 8, it is said that *"commercial paper is payable on demand where it is expressed to be payable* 'on demand,' 'when demanded,' 'after date,' *'on demand after date,'* \* \* \*" and "The Negotiable Instruments Law expressly provides that an instrument is payable on demand where it is expressed to be payable on demand, at sight, or on presentation, or where no time for payment is expressed." Section 599, pp. 404, 405. See Act No. 64 of 1904; Brannon on Negotiable Instruments, § 7 (1), p. 163; Daniel on Negotiable Instruments, 7th Ed., vol. 3, § 1394A, p. 1427; also, 4th Ed., § 89. Italics ours.

In support of his contention that the notes matured the day after the execution thereof counsel for plaintiff has pointed out the well-recognized and established rule of law and the jurisprudence of this court and of most of the courts of the other states that a note payable on demand is *due* immediately so that an action can be brought at any time without any other demand than the suit, and that prescription runs on such a note from its date and not from the demand. This rule, however, does not apply where the intention of the parties is to the contrary; nor when a negotiable demand note is transferred in due course within a reasonable time. Corpus Juris, vol. 8, § 602, pp. 406, 407; Act No. 64 of 1904.

The Negotiable Instruments Law, Act No. 64 of 1904, expressly provides that "where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course," section 53; and it also provides that "in determining what is a 'reasonable time,' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case." Section 193. Moreover, the act provides that "every holder is deemed prima facie to be a holder in due course." Section 59. See, also, Brock v. Citizens Bank & Trust Co., 187 La. 1078, 175 So. 673.

It is provided in the Revised Civil Code that "when two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts," article 2207, and that compensation takes place "by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums," article 2208, but *"compensation can not take place to the prejudice of the rights acquired by a third person."* Article 2215. (Italics ours.) See, also, In re Liquidation of Canal Bank & Trust Co., Intervention of Gay-Sullivan & Co., 182 La. 421, 162 So. 31, 102 A.L.R. 1091; In re Canal Bank & Trust Company, Intervention of Orleans Homestead Association, 186 La. 366, 172 So. 421; and Reconstruction Finance Corporation v. Thomson et al., 186 La. 1, 171 So. 553.

We are of the opinion that the record shows conclusively that it was not the intention of the parties that the notes sued on should be demandable or paid prior to the time that they were transferred to the Reconstruction Finance Corporation. These notes were executed for the purpose of operating plaintiff's banking business, and the parties necessarily contemplated that the maker would have a reasonable time in which to pay them; otherwise, the purpose of the loans would be defeated. That such was the intention of the parties is evidenced by the terms of the notes involved in the suit. Each note contains the stipulation that the collateral attached thereto was not only security for that note but was also security for "any and every other debt * * * due or to become due * * * to said bank, up to the amount of $1,000,-000.00." And the ledger sheets show that three additional loans were made, to wit:

$15,000 on September 20, 1932; $10,000 on September 29, 1932; and $10,000 on October 31, 1932. It is also shown by the ledger sheets that on October 24, 1932, when plaintiff's note dated September 29, 1932, was delivered in pledge to the Reconstruction Finance Corporation, the balance to plaintiff's credit in the Hibernia Bank & Trust Company was $9,913.23, whereas plaintiff was indebted to the Hibernia Bank in the sum of $35,000; and on December 3, 1932, the date plaintiff's note of August 1, 1932, was pledged and delivered to the Reconstruction Finance Corporation, plaintiff had on deposit to its credit in the Hibernia Bank & Trust Company the sum of $9,685.16, while it was indebted at that time to its correspondent bank in the sum of $45,000. Furthermore, there would have been no incentive on the part of the payee of the notes to demand payment because they were secured by liquid collateral and interest was regularly paid on the notes monthly, even for several months after they had been transferred to the Reconstruction Finance Corporation, although the transfer was not known to the plaintiff at the time. In other words, if there was any one interested in having these notes paid, it was plaintiff in order to stop payment of interest.

Counsel for plaintiff argued that the fact that interest was paid on the notes strongly supports plaintiff's contention that the notes had matured and were past due when transferred to the Reconstruction Finance Corporation. It is shown that the interest was paid monthly on these notes in accordance with custom established between the parties, and, consequently, has no bearing on the maturity of the obligation.

We conclude that according to the facts and circumstances of this case, the transfer of the notes to the Reconstruction Finance Corporation, one within twenty-five days, and the other three months and three days of their respective dates, constituted a reasonable time within the meaning and contemplation of section 193 of the Negotiable Instruments Law. The Reconstruction Finance Corporation, therefore, is the holder in due course and is not subject to the equities which might have existed between plaintiff and the Hibernia Bank & Trust Company.

For the reasons assigned, the judgment of the lower court is affirmed; appellant to pay all costs.

HIGGINS, J., absent.